# EXHIBIT F

# FinCEN Feasibility of a Cross-Border Electronic Funds Transfer Reporting System under the BSA, App. A – FinCEN Program



# Feasibility of a Cross-Border Electronic Funds Transfer Reporting System under the Bank Secrecy Act



# FEASIBILITY OF A

# CROSS-BORDER ELECTRONIC FUNDS TRANSFER REPORTING SYSTEM

# UNDER THE BANK SECRECY ACT



*Prepared by the U.S. Department of the Treasury, Financial Crimes Enforcement Network*

*October 2006*

# TABLE OF CONTENTS

1.0 Executive Summary ........................................................................ v

2.0 Acknowledgments ......................................................................... ix

3.0 Overview ...................................................................................... 1

    3.1 Goals and Design of the Feasibility Study ................................... 1

    3.2 Background ............................................................................. 2

4.0 Data Reasonably Necessary to Identify Illicit Finance ................... 7

    4.1 Individual targeting/research of known subjects......................... 9

    4.2 Data Matching against Other Data Sources................................ 9

    4.3 Link Analysis ........................................................................ 10

5.0 Form, Manner, and Content of Reporting ..................................... 11

    5.1 Collecting from the "First In/Last Out" Institution in the U.S. 12

    5.2 Money Services Businesses as Collection Points....................... 14

    5.3 Form ..................................................................................... 15

    5.4 Manner.................................................................................. 17

    5.5 Content.................................................................................. 17

6.0 Technology Needed ...................................................................... 19

    6.1 Concept of Operations ........................................................... 19

    6.2 Rough Order of Magnitude Cost Estimates ............................. 21

7.0 Information Security Protections................................................... 23

8.0 Conclusions and Recommendations............................................... 31

    8.1 Project Risks ......................................................................... 31

    8.2 Pre-Acquisition Planning ....................................................... 34

        8.2.1 User Requirements Analysis .......................................... 35

        8.2.2 Institutional Cost Analysis............................................ 35

        8.2.3 Value Analysis.............................................................. 35

    8.3 System Development and Deployment...................................... 36

*Feasibility of a Cross-Border Electronic Funds Transfer Reporting System under the Bank Secrecy Act*

Appendix A – Financial Crimes Enforcement Network Programs ...... 37

Appendix B – Section 6302 .................................................. 45

Appendix C – Funds Transfer Rule ...................................... 47

Appendix D – Fundamentals of the Funds Transfer Process............. 55

Appendix E – Cross-Border Funds Transfer Reporting in
    Canada and Australia........................................................ 71

Appendix F – Potential Analytical Value of Cross-Border
    Funds Transfer Reports..................................................... 83

Appendix G – FinCEN Industry Survey and Responses ................... 111

Appendix H – Technical Alternatives Analysis................................... 139

Appendix I – BSA E-Filing Fact Sheet ............................................... 155

Appendix J – Preliminary Work Breakdown Schedule ...................... 157

Appendix K – Rough Order of Magnitude Cost Estimates................ 159

Appendix L – Project Management and Information
    Technology Processes....................................................... 165

Appendix M – Acronyms.................................................. 171

# APPENDIX A – FINANCIAL CRIMES ENFORCEMENT NETWORK PROGRAMS

The Department of the Treasury established the Financial Crimes Enforcement Network in April 1990.[33]  FinCEN's original mission was to establish a government-wide multi-source financial intelligence and analysis network to support the detection, investigation, and prosecution of domestic and international money laundering and other financial crimes.  In 1994, FinCEN's mission expanded to include regulatory responsibilities.  The USA PATRIOT Act of 2001 established FinCEN as a Bureau within the Treasury Department to support law enforcement efforts and foster interagency and global cooperation against domestic and international financial crimes, and to provide U.S. policy makers with strategic analyses of domestic and worldwide trends and patterns.[34]  FinCEN works toward those ends through information collection, analysis, and sharing, as well as technological assistance and innovative, cost-effective implementation of the Bank Secrecy Act.  On March 8, 2004, FinCEN became a part of the Department of the Treasury's Office of Terrorism and Financial Intelligence, the lead office in the Treasury Department for fighting the financial war on terror, combating financial crime, and enforcing economic sanctions against rogue nations.

The Bank Secrecy Act is the nation's first and most comprehensive federal anti-money laundering statute.  Since its enactment in 1970, Congress has amended the Act several times to improve and enhance information collection.  The Bank Secrecy Act authorizes the Secretary of the Treasury to issue regulations requiring banks and other financial institutions to keep records and file reports on certain financial transactions determined to have a high degree of usefulness in criminal, tax, regulatory investigations and proceedings, and certain intelligence and counterterrorism matters.  The authority of the Secretary to administer Title II of the Bank Secrecy Act (codified at 31 U.S.C. 5311-5330 with implementing regulations at 31 C.F.R. Part 103) has been delegated to the Director of the Financial Crimes Enforcement Network.

FinCEN is charged first and foremost with safeguarding the financial system of the United States from abuse by criminals and terrorists. FinCEN works to accomplish its mission through:

- Administration of the Bank Secrecy Act - a regulatory regime that provides for the reporting of highly sensitive financial data that are critical to investigations of financial crime;

---

33  Treasury Order Number 105-08 (Apr. 25, 1990).

34  Pub. L. No. 107-56, Title III, Subtitle B, Section 361(a)(2), 115 Stat. 272, 329-332.  See Treasury Order 180-01 (Sept. 26, 2002).

- Dissemination of the data reported under the Bank Secrecy Act to law enforcement and, under appropriate circumstances, the intelligence community;

- Analysis of information related to illicit finance - both strategic and tactical analysis; and

- Education and outreach provided to law enforcement and the financial industry on issues relating to illicit finance.

In carrying out this mission, FinCEN serves many complementary roles:

- FinCEN is a regulatory agency.  FinCEN administers the Bank Secrecy Act, the principal regulatory statute aimed at addressing the problems of money laundering and other forms of illicit finance, including terrorist financing.  FinCEN is responsible for shaping and implementing this regulatory regime and, in concert with the federal functional regulators and the Internal Revenue Service, for ensuring compliance with the regime.  The agency also protects the integrity and confidentiality of the information collected under the Bank Secrecy Act.

- FinCEN is a financial intelligence agency.  While not a member of the intelligence community, FinCEN is responsible for ensuring the efficient and timely collection, maintenance, analysis, and dissemination of financial information critical to investigations of illicit finance.

- FinCEN is a law enforcement support agency.  While FinCEN has no criminal investigative or arrest authority, much of its effort supports the investigation and successful prosecution of financial crime.

- FinCEN is a network.  FinCEN does not support one agency or a select group of agencies, but makes its information, products, and services available to all agencies that have a role in investigating illicit finance.  FinCEN networks these agencies using technology that identifies when different agencies are searching the same data and facilitates coordination - avoiding investigative overlap and permitting the agencies to leverage resources and information.

From its position within the Treasury Department's Office of Terrorism and Financial Intelligence, FinCEN works to "operationalize" Treasury's policy priorities on these important issues.  This coordinated effort contributes to a greater emphasis and understanding of money laundering, terrorist financing, and other forms of illicit finance not only at Treasury, but also throughout the United States Government.

In its role as the administrator of the Bank Secrecy Act, FinCEN:

- Develops and issues regulations to implement the provisions of the BSA and the USA PATRIOT Act;

- Issues interpretive guidance to educate industry about red flags, vulnerabilities, and money laundering and terrorist financing methodologies;

- Conducts outreach and training to regulated industries, regulators, examiners, and law enforcement to improve consistency in the administration and enforcement of the BSA;

- Collects, maintains, and analyzes reports and information filed by financial institutions under the Bank Secrecy Act;

- Disseminates BSA data to law enforcement and regulatory agencies;

- Ensures financial institution compliance with the regulations and consistent application of the regulations across all affected financial services industries; and

- Takes civil enforcement actions in the case of serious non-compliance.

While FinCEN is responsible for ensuring compliance with the Bank Secrecy Act and implementing regulations, FinCEN does not itself examine financial institutions for compliance. Instead, FinCEN has delegated its authority to examine financial institutions for BSA compliance to the primary federal regulators of those financial institutions. FinCEN thereby can leverage the resources and expertise of other Federal agencies and self-regulatory organizations by relying on these agencies to conduct compliance exams. FinCEN has delegated its examination responsibility to the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, the National Credit Union Administration, Securities and Exchange Commission, the Commodity Futures Trading Commission, and the Internal Revenue Service (Small Business/Self-Employed Division).[35]

FinCEN has an important role in supporting the examination regime created through our delegations. FinCEN's role involves providing prompt Bank Secrecy Act interpretive guidance to regulators, policy makers, and the financial services industry, and ensuring the consistent application of the Bank Secrecy Act regulations across industry lines, most notably through the rule-making process, issuance of guidance, and through FinCEN's Office of Compliance. Through that Office, and pursuant to Memoranda of Understanding executed with FinCEN,

---

35   See 31 C.F.R. § 103.56(b).

federal agencies to which FinCEN has delegated BSA compliance examination authority periodically provide to FinCEN information related to BSA deficiencies within the institutions they regulate. This information helps FinCEN develop a more accurate picture of compliance in the industry and address compliance issues expeditiously. The information also helps FinCEN fulfill its obligation to administer and to oversee compliance with the BSA, and provides consistency and quality in referrals of potential BSA violations to FinCEN.

At the invitation of the Federal Financial Institutions Examination Council, FinCEN, along with the five Federal banking agencies, has issued interagency Bank Secrecy Act/Anti-Money Laundering examination procedures. These examination procedures emphasize a banking organization's responsibility to establish and implement risk-based policies, procedures, and processes to comply with the BSA and safeguard its operations from money laundering and terrorist financing.

As noted above, FinCEN promotes BSA compliance by all financial institutions through training, education, and outreach. Further, FinCEN supports the examination functions performed by the other agencies by providing them access to information filed by financial institutions and by facilitating cooperation and information sharing among the various financial institution regulators to enhance the effectiveness of Bank Secrecy Act examination and, ultimately, industry compliance.

FinCEN has retained the authority to pursue civil enforcement actions against financial institutions for non-compliance with the Bank Secrecy Act and the implementing regulations. Under the Bank Secrecy Act, FinCEN is empowered to assess civil monetary penalties against, or require corrective action by a financial institution committing negligent or willful violations of the Bank Secrecy Act. Generally, FinCEN identifies potential enforcement cases through: (1) referrals from the agencies examining for Bank Secrecy Act compliance; (2) self-disclosures by financial institutions; and, (3) FinCEN's own inquiry to the extent it becomes aware of possible violations.[36]

## FinCEN's Counter-Terrorism Strategy

An important operational priority for FinCEN is providing counter-terrorism support to law enforcement and the intelligence agencies. FinCEN's comprehensive counter-terrorism strategy draws from its analytic support to law enforcement, regulatory tools and expertise, and international networking capabilities. The strategy has five basic components.

---

[36] It should be noted that under Title 12 of the U.S. Code, the banking regulators have authority to enforce certain regulations that fall under their respective statutes as well as under the Bank Secrecy Act, such as the requirement that depository institutions have anti-money laundering programs. In addition, the Internal Revenue Service has authority to enforce certain Bank Secrecy Act requirements including the IRS/FinCEN Form 8300 reporting for non-financial trades and businesses, and the Report of Foreign Bank and Financial Accounts by individuals and entities.

*Feasibility of a Cross-Border Electronic Funds Transfer Reporting System under the Bank Secrecy Act*

### Analysis of Terrorist Financing Suspicious Activity Reports

FinCEN analyzes suspicious activity reports for both tactical and strategic value. At the tactical level, every report that indicates a connection to terrorism is immediately reviewed and validated and then analyzed with other available information. This information is packaged and referred to the Terrorist Threat Integration Center (TTIC), within FBI's Terrorist Financing Operations Section (TFOS), and other relevant law enforcement agencies. Moreover, this information is stored in a manner that facilitates its access and availability for analysis.

At the strategic level, FinCEN analysts study Bank Secrecy Act data and all other available information to gain an increased understanding of methodologies, typologies, geographic patterns of activity and systemic vulnerabilities relating to terrorist financing. These analysts focus on regional and systemic "hot spots" for terrorist financing, studying and analyzing all sources of information. Such focus can significantly add to the knowledge base of law enforcement.

### USA PATRIOT Act Section 311

To safeguard the financial system at home from criminal threats abroad, section 311 of the USA PATRIOT Act authorizes the Secretary of the Treasury to designate foreign financial institutions, jurisdictions, classes of foreign transactions, or types of accounts as being of "primary money laundering concern" and to require U.S. financial institutions to take special measures regarding the designated entities. FinCEN provides analytic, regulatory, and legal resources to support effective implementation of Section 311 by the Treasury Department. FinCEN conducts in-depth analyses, including interagency consultation, and compiles the administrative records to support designations and proposed special measures.

### International Cooperation and Information Sharing

FinCEN offers a wide array of information exchange and technical assistance to foreign governments, providing policy recommendations and guidance, analytical training, technological advice, and staff support in order to foster the implementation of anti-money laundering and counter-terrorism financing regimes worldwide. FinCEN works in tandem with other government agencies such as the Departments of State and Justice and the Treasury Department's Office of Technical Assistance in assessing nations' efforts to combat money laundering and terrorism finance, playing a lead role in reporting on countries in the money laundering section of the annual International Narcotics Control Strategy Report. Such assessments serve as a basis for establishing U.S. government priorities in the realm of technical assistance to other nations.

Since June 1995, the U.S. has pursued an aggressive policy of promoting a worldwide network of financial intelligence units in its overall strategy of fighting money laundering and terrorist financing. FinCEN is a founding

member of the Egmont Group of financial intelligence units. The Egmont Group is an international network of 101 countries that have implemented national centers to collect information on suspicious or unusual financial activity from the financial industry, to analyze the data, and to make it available to appropriate national authorities and other financial intelligence units for use in combating terrorist funding and other financial crime. FinCEN, in its FIU capacity, acts as a conduit to process and disseminate requests for information between domestic U.S. law enforcement or regulatory agencies and our counterpart Egmont member FIUs. FinCEN additionally prepares and provides analytical products in response to requests from our counterpart FIUs. The exchange of information is at the heart of the Egmont Group.

Effectively addressing money laundering and terrorist financing requires international cooperation and coordination. FinCEN also supports U.S. bilateral and multilateral efforts to join with other nations in a concerted fashion to combat transnational crime, such as the Financial Action Task Force (FATF),[37] as well as FATF-style regional bodies including the Asia/Pacific Group on Money Laundering, Caribbean Financial Action Task Force, Eastern and Southern Africa Anti-Money Laundering Group, Financial Action Task Force for South America, International Group Against Money Laundering,[38] and the MONEYVAL Committee of the Council of Europe. FinCEN supports the Department of the Treasury by participating to varying degrees in all of these bodies with the aim of furthering information exchange among members and coordinating training and technical assistance programs.

FinCEN is able to play a unique role in working with other nations interested in establishing FIUs and strengthening ties among existing units. To this end, FinCEN, through its Office of Global Liaison, advises FIUs under development, providing training to FIU personnel on subjects such as suspicious transaction report analysis, charts and graphing, link analysis, money laundering typologies, alternate remittance systems, bank compliance, and other FIU-specific topics.

### USA PATRIOT Act Section 314(a) Information Sharing

Section 314(a) of the USA PATRIOT Act of 2001 requires the Secretary of the Treasury to adopt regulations to encourage regulatory authorities and law enforcement authorities to share with financial institutions information regarding individuals, entities, and organizations engaged in or reasonably suspected, based on credible evidence, of engaging in terrorist acts or money laundering activities. FinCEN's regulations under Section 314(a)[39] enable

---

37  Formed in 1989 by the G-7 Economic Summit, FATF is dedicated to promoting the development of effective anti-money laundering and counter-terrorism finance laws and programs and enhancing cooperation among its membership and around the world.

38  An organization comprised of West African states under the umbrella of ECOWAS.

39  31 C.F.R. § 103.100.

federal law enforcement agencies to reach out, through FinCEN, to more than 45,000 points of contact at more than 27,000 financial institutions to locate accounts and transactions of persons that may be involved in terrorism or money laundering.

FinCEN receives requests from federal law enforcement and upon review, sends requests to designated contacts within financial institutions across the country once every two weeks via either a secure Internet web site or via facsimile. The requests contain subject and business names, addresses, and as much identifying data as possible to assist the financial industry in searching their records. The financial institutions must query their records for matches, including accounts maintained by the named subject during the preceding twelve months and transactions conducted within the last six months. Financial institutions have two weeks from the transmission date of the request to respond to 314(a) requests. If the institution does not identify any matching accounts or transactions, it need not reply to the 314(a) request.

The 314(a) process enables investigators to canvas financial institutions for potential lead information that they might otherwise never find. This cooperative partnership between the financial community and law enforcement allows disparate bits of information to be identified, centralized, and evaluated rapidly.

The 314(a) process is not, however, a substitute for a subpoena or other legal process. To obtain documents from a financial institution that has reported a match, a law enforcement agency must meet the legal standards that apply to the particular investigative tool that it chooses to use to obtain the documents.

To ensure that investigators use the 314(a) process appropriately, FinCEN requires federal law enforcement agencies to submit documentation demonstrating the size or impact of the case, the seriousness of the underlying criminal activity, the importance of the case to a major agency program, and any other facts demonstrating the significance of the case. The requestor also must certify that the investigation arises from credible evidence of terrorist financing or money laundering and, in cases involving money laundering, that all traditional means of investigation have been exhausted.

### Regulatory Outreach

FinCEN applies its analytical skills also to provide information to the regulated community to better identify potential vulnerabilities to money laundering and terrorist financing activity. One area of particular focus is money services businesses. Money services businesses continue to require more attention and resources. These operations include small businesses that typically offer money remittance services, check cashing, money orders, stored value products and other informal value transfer systems. Our most recent initiative, an Advance Notice of Proposed Rulemaking issued on March 8, 2006, addresses the issue of access to banking services by money services businesses. This Advance Notice

solicits updated facts and recommendations regarding ongoing concerns about the Bank Secrecy Act, and what additional guidance or regulatory action, if any, would be appropriate to address these concerns. The comments will assist us in determining whether to provide additional guidance to  industry and the content of any such guidance.