# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

ALPINE SECURITIES CORPORATION,

      Defendant.

Civil No. 1:17-CV-04179-DLC

Honorable Judge Denise L. Cote
Magistrate Judge Ronald L. Ellis

**ECF CASE**

---

**ALPINE SECURITIES CORP.'S MEMORANDUM OF LAW IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corp.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

MOTION STANDARDS ........................................................................................................ 4

ARGUMENT ......................................................................................................................... 4

POINT I  ALPINE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE SEC
LACKS AUTHORITY TO PURSUE AN ACTION FOR VIOLATIONS OF
THE BANK SECRECY ACT ...................................................................................... 4

    A.   Authority to Pursue an Enforcement Action Alleging Violations of the BSA
or its Implementing Regulations Lies with FinCEN – Not the SEC. .................... 4

        1.   Federal Agencies Must Act within the Authority Delegated by
Congress. ........................................................................................................ 5

        2.   Authority to Enforce the Provisions of the BSA Lies with FinCEN. .............. 7

        3.   The SEC Has Only Examination Authority and May Not Pursue
Violations of the BSA. .................................................................................... 9

    B.   The SEC Cannot Use Rule 17a-8 to Pursue Alleged Violations of the BSA ....... 13

        1.   This Action is Predicated on Allegations of Violations of the BSA ............... 14

        2.   An Interpretation of Rule 17a-8 that Permits an Action for BSA
Violations Is Impermissible Because it Contravenes the Congressional
and FinCEN Delegation .................................................................................. 16

        3.   An Interpretation of Rule 17a-8 that Permits an Action for Violation of
the BSA Would Be Impermissible Because It Would Exceed the
Authority Conferred by Section 17 of the Exchange Act ............................... 17

POINT II THE SEC's CLAIM ALSO FAILS AS A MATTER OF LAW BECAUSE THE
SEC FAILED TO ALLEGE THE NECESSARY ELEMENTS OF
WILFULLNESS OR NEGLIGENCE ......................................................................... 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adamo Wrecking Co. v. U.S.*,
    434 U.S. 275 (1978)..................................................................................13

*Adams Fruit Co. v. Barrett*,
    494 U.S. 638 (1990)..................................................................................16

*Am. Bankers Ass'n v. S.E.C.*,
    804 F.2d 739, 754-55 (D.C. Cir. 1986)...........................................18, 19

*Am. Bus Ass'n v. Slater*,
    231 F.3d 1 (D.C. Cir. 2000)............................................................22, 24

*Arista Records LLC v. Lime Grp. LLC*,
    No. 06CV5936 (KMV), 2011 WL 1793310 (S.D.N.Y. Mar. 14, 2011)...................................4

*Boruski v. SEC*,
    340 F.2d 991 (2d Cir. 1965)...................................................................18

*California Bankers Ass'n v. Shultz*,
    416 U.S. 21 (1974)..........................................................................7, 9, 24

*Cent. Forwarding, Inc. v. I.C.C.*,
    698 F.2d 1266 (5th Cir. 1983) ........................................................17, 19

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)...........................................................................5, 24

*Cudahy Packing Co. v. Holland*,
    315 U.S. 357 (1942)...........................................................................6, 12

*Edmond v. United States*,
    520 U.S. 651 (1997)..................................................................................22

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)..................................................................................25

*Haitian Ctrs. Council, Inc. v. Sale*,
    823 F. Supp. 1028 (E.D.N.Y. 1993) ...................................................6, 22

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997).........................................................6, 9, 12, 18

*Heublein, Inc. v. F.T.C.*,
 539 F. Supp. 123 (D. Conn. 1982) ......................................................................5

*L.P. Steuart & Bros. v. Bowles*,
 322 U.S. 398 (1944) ...............................................................................22, 24

*U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
 377 F.3d 145 (2d Cir. 2004) .............................................................................15

*Louisiana Pub. Serv. Comm'n v. F.C.C.*,
 476 U.S. 355 (1986) ..........................................................................5, 9, 16

*McClellan v. Smith*,
 439 F.3d 137 (2d Cir. 2006) ..............................................................................4

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
 414 U.S. 453 (1974) ...............................................................................21, 22

*Natural Res. Def. Council v. Abraham*,
 355 F.3d 179 (2d Cir. 2004) .......................................................................5, 16

*New York State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*,
 267 F.3d 128 (2d Cir. 2001) .............................................................................20

*Patel v. Contemporary Classics of Beverly Hills*,
 259 F.3d 123 (2d Cir. 2001) ..............................................................................4

*Ratzlaf v. United States*,
 510 U.S. 135 (1994) .......................................................................................23

*SEC v. Sloan*,
 436 U.S. 103 (1978) .......................................................................................16

*Secs. Inv. Prot. Corp. v. Barbour*,
 421 U.S. 412 (1975) .......................................................................................22

*Shook v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*,
 132 F.3d 775, 782-85 (D.C.Cir.1998) ...........................................................6, 12

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
 444 U.S. 11 (1979) ........................................................................................22

*United States v. Giordano*,
 416 U.S. 505 (1974) .....................................................................................6, 12

*United States v. Heyman*,
 794 F.2d 788 (2d Cir. 1986) .............................................................................25

*United States v. Mazza-Alaluf*,
607 F. Supp. 2d 484 (S.D.N.Y. 2009) (Castel, J.), *aff'd*, 621 F.3d 205 (2d Cir.
2010) ................................................................................................................................7

*United States v. One (1) Lot of Twenty-Four Thousand Nine Hundred Dollars
($24,900.00) in U.S. Currency*,
770 F.2d 1530 (11th Cir. 1985) ...................................................................................23, 24

*United States v. Pomerantz*,
No. C16-0689JLR, 2017 WL 2483213 (W.D. Wash. June 8, 2017) ......................................23

*United States v. Thakkar*,
721 F. Supp. 1030 (S.D. Ind. 1989) ......................................................................................25

*United States v. Workman*,
110 F.3d 915 (2d Cir. 1997) ....................................................................................................6

*In re Watson*,
161 F.3d 593 (9th Cir. 1998) .................................................................................................24

*Westport Ins. Corp. v. Napoli, Kaiser & Bern*,
746 F. Supp. 2d 502 (S.D.N.Y. 2010) (Stein, J.) .................................................................14

**Federal Statutes, Rules & Regulations**

5 U.S.C.
§ 553...............................................................................................................................20
§ 558(b).............................................................................................................5, 16, 22
§ 706(2)(c).........................................................................................................5, 16, 22

15 U.S.C.
§ 78q(a) ......................................................................................................... *passim*
§ 78u(d)(3)(B)(i) ...............................................................................................21

31 U.S.C.
§ 310(a)...............................................................................................................8
§ 310(b)...............................................................................................................9
§ 310(b)(2)(I) ......................................................................................................8
§ 310(b)(2)(J) ......................................................................................................8
§ 321(b)...............................................................................................................9
§ 321(b)(2)...........................................................................................................8
§ 3729(e) ............................................................................................................15
§ 5314................................................................................................................12
§ 5318..................................................................................................................9
§ 5318(g)..........................................................................................................4, 7
§ 5320..............................................................................................................8, 9
§ 5321..............................................................................................................9, 12
§ 5321(a)(1) ...........................................................................................3, 8, 21, 23

§ 5321(a)(5) .................................................................................................. 23
§ 5321(a)(6) ..................................................................................... 8, 21, 23
§ 5321(b)(2) ..................................................................................................... 8
§ 5321(e) ........................................................................................................ 12
§ 5321(e)(1) ................................................................................................... 12

46 U.S.C. § 2104(a) ........................................................................................... 6

Administrative Procedures Act, 5 U.S.C. §§ 551 et seq. & §§ 701 et seq. .............. 5, 20

Bank Secrecy Act, 31 U.S.C. §§ 5311-5332 ...................................................... *passim*

Securities Exchange Act
§ 17 ............................................................................................................... 17
§ 17(a) ................................................................................................... *passim*
§ 21(d)(3) ....................................................................................................... 21

17 C.F.R.
§§ 240.17a-1 - 17a-25 ................................................................................... 19
§ 240.17a-8 .............................................................................................. *passim*

31 C.F.R.
§ 1010.350 ..................................................................................................... 12
§ 1010.420 ..................................................................................................... 12
§ 1010.810 ................................................................................................ 10, 11
§ 1010.810(a) ......................................................................................... 9, 10, 11
§ 1010.810(b) ................................................................................................. 10
§ 1010.810(d) ....................................................................................... 9, 10 , 11
§ 1010.810(f) ................................................................................................. 10
§ 1010.810(g) ................................................................................................. 12
§ 1010.820 ..................................................................................................... 12
§ 1010.820(f) ............................................................................................. 8, 23
§ 1010.820(h) ............................................................................................. 8, 23
§ 1023.320 ............................................................................................. 4, 7, 14
§ 1023.320(a)(1) .............................................................................................. 7
§ 1023.320(a)(2) .............................................................................................. 7

46 Fed. Reg. 61,454 (Dec. 19, 1981) ................................................................. 19

46 Fed. Reg. 61,455 (Dec. 17, 1981) ................................................................. 20

52 Fed. Reg. 11,436 (Apr. 8, 1987) ................................................................. 9, 10

67 Fed. Reg. 44,048 (July 1, 2002) ........................................................... 7, 13, 19

76 Fed. Reg. 11,328 (Mar. 2, 2011) ................................................................... 20

Treasury Order

180-01 ....................................................................................................................9

180-01(3)(a) .......................................................................................................8, 9

180-01(3)(b) .......................................................................................................8, 9

Fed. R. Civ. P.

56(c) ....................................................................................................................4

12(b)(6) ...............................................................................................................4

12(c) ................................................................................................................4, 22

Defendant Alpine Securities Corporation ("Alpine"), files this Memorandum in Support of its Cross-Motion for Summary Judgment and its Motion for Judgment on the Pleadings.

## INTRODUCTION

Defendant Alpine is entitled to summary judgment on the claims asserted by the Securities and Exchange Commission's ("SEC") based on the irrefutable and fundamental fact that the SEC does not possess authority to pursue allegations of and penalties for violations of the Bank Secrecy Act (the "BSA"). The filing of suspicious activity reports ("SARs") is governed by the Bank Secrecy Act, 31 U.S.C. §§ 5311-5332, along with implementing regulations promulgated by the United States Department of the Treasury ("Treasury Department"), including through the Secretary of the Treasury (the "Treasury Secretary") and the Treasury Department Financial Enforcement Network ("FinCEN"). Congress delegated rulemaking and enforcement authority with respect to the BSA only to the Treasury Secretary and his delegates in the Treasury Department, including FinCEN. Over the course of decades and in consistent pronouncements, FinCEN has deliberately and expressly retained that enforcement authority. The corollary is obvious: the SEC did not receive authority to pursue claims for violations of the BSA and, absent a delegation of authority, an agency like the SEC has no power to act. Although FinCEN has delegated authority to the SEC to *examine* broker dealers for compliance with the BSA, this delegation provides no greater rights than the term implies – the right to examine and refer matters to FinCEN for enforcement.

Notwithstanding FinCEN's clear retention of enforcement authority, the SEC insists that it possesses authority to charge violations of the BSA because, it claims, it is bringing this action under Section 17(a) of the Securities Exchange Act ("the Exchange Act"), 15 U.S.C. § 78q(a) and under Rule 17a-8 (the "Rule") thereunder, 17 C.F.R. § 240.17a-8. That Rule, the SEC maintains, incorporates *all* of the requirements of the BSA – recordkeeping as well as reporting –

1

and so transforms a failure to file a SAR into a violation of that Rule. Not only does it supposedly enable the SEC to pursue alleged violations of the BSA but it also permits them to do so in the context of a strict liability provision and ignore the BSA provisions that establish particular scienter requirements and that govern the imposition and amount of penalties.

The SEC's argument that it can pursue substantive BSA claims under Rule 17a-8 fails in two critical respects. First, as demonstrated below, the SEC's case is plainly premised on allegations of violations of the BSA, and the SEC cannot disregard or circumvent the Congressional delegation of authority with the pretense that this is a Rule 17a-8 "books and records" action. The SEC's own pronouncements in this case make abundantly clear that it is asserting a violation of the BSA. According to the SEC, this enforcement action addresses "Alpine's practices related to filing Suspicious Activity Reports ("SARs") with the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN")." (SEC Compl., ¶ 1, Dkt. No. 1.) The SEC's entire case hinges on its allegation that Alpine violated the substantive SAR filing requirements of the BSA and its implementing regulations, for which it seeks to recover both civil penalties and injunctive relief on a strict liability basis. Its nominal references to Section 17(a) and Rule 17a-8 cannot disguise the fact that its substantive allegations are all predicated on alleged violations of the BSA, which it lacks the authority to pursue. The effort by the SEC to camouflage its claims, and its argument that it is not seeking to enforce BSA violations in complete disregard of the Congressional delegation of authority, is a mischaracterization of the SEC's allegations that should be rejected by this Court.

Equally critical is that Rule 17a-8 could not subsume the BSA's substantive reporting requirements, even if the SEC promulgated a rule specifically stating that it could enforce those BSA reporting obligations. Rule 17a-8 is a component of the recordkeeping provisions of the Exchange Act and it can extend only as far as the statutory authority under which it was

promulgated. The language and purpose of that relevant statute, Section 17(a) – including the absence of any scienter requirement and the structure and content of rules promulgated pursuant to that statute – demonstrate that those provisions pertain not to substantive violations of reporting obligations but to record retention. Thus, even assuming that the language of Rule 17a-8 could be interpreted consistent with the SEC's position that it enables the SEC to pursue violations of the BSA substantive *reporting* requirements, that Rule would be invalid because it would run afoul of *both* the Congressional delegation of BSA authority *and* the extent of the authority conferred by Section 17(a) of the Securities Exchange Act.

Second, even if the SEC has the authority to bring this action, its complaint is fatally defective because it fails to allege the elements necessary to pursue and penalize a failure to comply with SARs obligations. To impose liability for a violation of the BSA reporting requirement, Congress has expressly required a showing of willfulness or negligence. *See* 31 U.S.C. § 5321(a)(1). The SEC, however, seeks to impose penalties for failing to file SARs, or filing inadequate SARs, pursuant to a provision that contains no scienter requirement. According to the SEC, the language of Rule 17a-8 sweeps into the SEC's recordkeeping provisions the entirety of the BSA while somehow leaving behind the statutory scheme associated with a violation of the BSA, including both the scienter requirement and the limits on monetary penalties. Based on that view that it can charge violations of the BSA without reference to the actual BSA provisions, the SEC failed even to allege that Alpine's purported violations of the SAR requirements of the BSA were done either willfully or negligently. The SEC cannot, consistent with the statute and the requirements of due process, disregard the scienter and fault requirements mandated by Congress and transform the BSA into a strict liability statute for only those occasions when the SEC brings an action.

Accordingly, the Court should grant Alpine's Motion for Summary Judgment and/or Judgment on the Pleadings, dismiss the SEC's Complaint with prejudice, and deny the SEC's Motion for Partial Summary Judgment.

## MOTION STANDARDS

"Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party ... is entitled to a judgment as a matter of law." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing Fed. R. Civ. P. 56(c)). "In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* "It is a settled rule that 'credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *Id.* (citation omitted).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "'As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint . . . .'" *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1793310, at *1 (S.D.N.Y. Mar. 14, 2011) (citation omitted).

## ARGUMENT

**I.     ALPINE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE SEC LACKS AUTHORITY TO PURSUE AN ACTION FOR VIOLATIONS OF THE BANK SECRECY ACT**

**A.     Authority to Pursue an Enforcement Action Alleging Violations of the BSA or its Implementing Regulations Lies with FinCEN – Not the SEC.**

The SEC argues that Alpine failed to comply with the BSA and its implementing regulations – specifically, the substantive SAR requirements set forth in 31 U.S.C. § 5318(g) and 31 C.F.R. § 1023.320. (*See* SEC's Complaint, Dkt. No. 1, at ¶¶ 1, 3-4, 11-13, 28-43, 46; SEC's

Memorandum of Law in Support of its Motion for Partial Summary Judgment ("SEC Br.") 1, 6-23.) For these purported BSA violations, the SEC seeks both civil penalties and injunctive relief. (*See* Complaint, at pp. 19-20.) It is beyond cavil, however, that the SEC is not permitted to pursue an enforcement action for violation of the BSA. Nor can it finagle a way to circumvent the extent of Congressional authority by creating and invoking its own Rule 17a-8.

### 1. Federal Agencies Must Act within the Authority Delegated by Congress.

A "federal agency" is a "'creature of statute'" that has "'*only* those authorities conferred upon it by Congress.'" *Natural Res. Def. Council v. Abraham,* 355 F.3d 179, 202 (2d Cir. 2004) (emphasis in original) (citation omitted). A federal "agency literally has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). "An agency may not confer power upon itself. To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress." *Id.* at 374-75. In determining questions of agency authority, Courts look first to the plain language to determine intent. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* (footnote omitted).

Congress also codified these principles in the Administrative Procedures Act (the "APA"): "A sanction may not be imposed or a substantive rule or order issued except within jurisdiction delegated to the agency and as authorized by law." 5 U.S.C. § 558(b). "Under Section 706(2)(c) of the APA, agency action must be set aside if it exceeds the agency's statutory jurisdiction or authority." *Heublein, Inc. v. F.T.C.*, 539 F. Supp. 123, 128 (D. Conn. 1982); *see also* 5 U.S.C. § 706(2)(c) ("[T]he reviewing court shall . . . hold unlawful and set

aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."). "Agency actions that do not fall within the scope of a statutory delegation of authority are *ultra vires* and must be invalidated by reviewing courts." *Haitian Ctrs. Council, Inc. v. Sale*, 823 F. Supp. 1028, 1046 (E.D.N.Y. 1993)

In light of these considerations, courts construe Congressional delegations of power to agencies narrowly and routinely invalidate agency actions that exceed the delegated authority. In *Cudahy Packing Co. v. Holland,* 315 U.S. 357, 364, 367 (1942), for example, the Supreme Court held that the Administrator of the Department of Labor had no authority to delegate his statutory power to sign and issue subpoenas, even though he was allowed to delegate authority to "gather data and make investigations." *Id.* at 363-64. The Court observed: "the grant of authority to delegate the power of inspection, and the omission of authority to delegate the subpoena power, show a legislative intention to withhold the latter." *Id.* at 364. Similarly, in *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997), the court held that the plain language of a statute that allowed the Secretary of the Department of Transportation to "'delegate the duties and powers conferred by this subtitle . . . to any officer, employee or member of the Coast Guard,'" evidenced Congress's intent to precluded the Transportation Secretary from delegating his responsibilities under that statute outside of the Coast Guard. *Id.* at 181, 185, 189 (quoting 46 U.S.C. § 2104(a)).[1]

---

[1] *See also, e.g., Shook v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 132 F.3d 775, 782-85 (D.C. Cir. 1998) (interpreting portion of statute that allowed Board of Education "to delegate any of its authority to the Superintendent" not to allow District of Columbia Control Board—the successor by statute to the Board of Education—to delegate powers to newly created Board of Trustees—an administrative body outside of the Board of Education) (internal quotations and citation omitted); *United States v. Workman*, 110 F.3d 915, 918-19 (2d Cir. 1997) (holding that statute requiring the sentencing "court" to set fine payment schedule precluded court from delegating the scheduling of partial payments of fines to the Bureau of Prisons, even though it would be more practical and efficient); *United States v. Giordano*, 416 U.S. 505, 508, 513 (1974) (holding statute that "confer[s] power on the 'Attorney General, or any Assistant Attorney General specially designated by the Attorney General' to authorize wiretap applications precluded the 'Attorney General's Executive Assistant' from exercising such authority because "[p]lainly enough, the Executive Assistant is neither the Attorney General nor a specially designated Assistant Attorney General.").

### 2. Authority to Enforce the Provisions of the BSA Lies with FinCEN.

The BSA, originally enacted in 1970, was designed and remained, for decades, a currency transaction reporting and recordkeeping requirement established to address concerns regarding movement of illicit funds through financial institutions.  *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26-28, 38 (1974) (stating that, "in passing the [BSA]," *inter alia*, "Congress recognized the importance of reports of large and unusual currency transactions in ferreting out criminal activity" through financial institutions "both domestic and foreign").

The reporting requirement was expanded in 1992 with the enactment of 31 U.S.C. § 5318(g), to require financial institutions to report suspicious transactions.  67 Fed. Reg. 44,048 (July 1, 2002).  A decade later, in 2002, the SAR reporting and recordkeeping obligations were extended to broker-dealers through regulations promulgated by the Secretary and set forth in 31 C.F.R. § 1023.320.  *See* 31 C.F.R. § 1023.320(a)(1)-(2); *see also*  67 Fed. Reg. at 44,048. Pursuant to this regulation, a suspicious transaction must be reported only if it exceeds $5,000 *and* the broker dealer "knows, suspects or has reason to suspect" that the transaction involves or facilitates criminal conduct in four described circumstances.[2]  31 C.F.R. § 1023.320(a)(2).  The regulation also allows broker dealers to voluntarily file a SAR on transactions that do not meet the mandatory SAR filing requirements.  *Id.* § 1023.320(a)(1).

Authority to issue the BSA's implementing regulations as well as authority to bring enforcement actions were expressly delegated by Congress to Treasury Secretary.[3]  Moreover,

---

[2]  A SAR must be filed where the broker dealer "knows, suspects or has reason to suspect" that the transaction: (1) involves funds derived from illegal activity or was conducted to disguise funds derived from illegal activity; (2) is designed, whether through structuring or other means, to evade the requirements of the BSA; (3) has no business or apparent lawful purpose and is not the sort in which the particular customer would normally be expected to engage, and the broker dealer knows of no reasonable explanation for the transaction after examining the available facts; and (4) involves use of the broker dealer to facilitate criminal activity.  31 C.F.R. § 1023.320(a)(2).

[3]  *See, e.g.*, *California Bankers*, 416 U.S. at 26 ("Under the [Bank Secrecy] Act, the Secretary of the Treasury is authorized to prescribe by regulation certain recordkeeping and reporting requirements for banks and other financial institutions in this country.").  *Accord United States v. Mazza-Alaluf*, 607 F. Supp. 2d 484, 495-96 (S.D.N.Y. 2009) (Castel, J.), *aff'd*, 621 F.3d 205 (2d Cir. 2010) (observing the BSA "delegates an array of powers to the Secretary of Treasury," and that "Congress's broad delegation of rulemaking authority under the statute has been noted repeatedly," and citing cases).

Congress delegated plenary authority to the Treasury Secretary to bring civil enforcement actions and to seek remedies for violations of the BSA, including, relevant here, civil money penalties and injunctive relief. *See* 31 U.S.C. §§ 5321(a)(1), (a)(6), *and* (b)(2) (stating "the Secretary" may impose the civil money penalties for "willful[]" or "negligent[]" violations of the BSA or its implementing regulations, and may "commence a civil action to recover" the penalty assessed); 31 C.F.R. § 1010.820(f), (h) (same); 31 U.S.C. § 5320 (stating "the Secretary" may seek injunctive relief for actual or threatened violations of the BSA or its implementing regulations).

Separately, Congress authorized the Treasury Secretary to "delegate duties and powers of the Secretary to another officer or employee of the Department of the Treasury," *see* 31 U.S.C. § 321(b)(2), and, with respect to the BSA specifically, to FinCEN.[4] *See* 31 U.S.C. § 310(b)(2)(I), (J). As permitted by Congress, the Secretary re-delegated authority to the Director of FinCEN to, *inter alia,* (a) "[t]ake all necessary and appropriate actions to implement and administer the provisions of" the BSA, including "the promulgation and amendment of regulations and the assessment of penalties"; and (b) "[e]xercise authority for enforcement of and compliance with the regulations at 31 CFR part 103 [since renumbered to 31 CFR chapter X] with respect to the activities of agencies exercising authority thereunder that has been redelegated to such agencies by FinCEN . . . ." Treasury Order 180-01(3)(a), (b). Congress's intent, as expressed in the plain language of the BSA, could not have been more clearly stated. Under the BSA, only the Secretary, and those in the Treasury Department to whom the Secretary has validly re-delegated its authority, have jurisdiction to promulgate regulations that govern a financial institution's obligations and potential liabilities under the BSA, and bring an enforcement proceeding seeking remedies for violations of the SAR requirements of the BSA and its implementing regulations.

---

[4] FinCEN is a "bureau in the Department of the Treasury," and has the power to "[a]dminister the requirements of subchapter II of chapter 53 of this title" – the BSA – "to the extent delegated such authority by the Secretary of the Treasury." 31 U.S.C. § 310(a), (b)(2)(I).

*See* 31 U.S.C. §§ 310(b), 321(b), 5318, 5320, 5321.  As the Supreme Court stated, the BSA "is

not self-executing"; rather, "the Act's civil and criminal penalties attach only upon violation of

regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself

would impose no penalties on anyone."  *California Bankers*, 416 U.S. at 26, 64.

Consistent with the Secretary's directive in Treasury Order 180-01, the pertinent BSA

regulation states that "[o]verall authority for enforcement and compliance, including

coordination and direction of procedures and activities of all other agencies exercising delegated

authority under this chapter, is delegated to the Director, FinCEN."  31 C.F.R. § 1010.810(a).  As

confirmed in the comments to a 1987 amendment to the BSA implementing regulations, the

Treasury Department has "*exclusive* authority to impose civil penalties under the Bank Secrecy

Act."  *See* 52 Fed. Reg. 11,436, 11,440 cmt. 19, 11,445 (Apr. 8, 1987) (emphasis added).

### 3. The SEC Has Only Examination Authority and May Not Pursue Violations of the BSA.

Conversely, there is no provision of the BSA in which Congress delegated authority to

the SEC to promulgate rules to implement the BSA or bring civil enforcement actions for alleged

violations of the BSA.  *See* 31 U.S.C. §§ 5311-5332.  This alone is determinative of the SEC's

lack of authority in this regard.  *Louisiana Pub. Serv.*, 476 U.S. at 374 ("[A]n agency literally has

no power to act . . . unless and until Congress confers power upon it.");  *Halverson*, 129 F.3d at

185 (courts "'will not assume that Congress intended for that jurisdiction[al] [provision] to be

meaningless.'" (alterations in original) (citation omitted); *see also* n.1, *supra*.

It is equally clear that the Secretary has not re-delegated enforcement authority to the

SEC.  Rather, the Secretary delegated overall authority to administer and enforce the BSA and to

promulgate regulations thereunder to the Director of FinCEN.  *See* Treasury Order 180-01(3)(a),

(b); 31 C.F.R. § 1010.810(a), (d).  The Secretary and FinCEN only re-delegated to the SEC the

9

"[a]uthority to examine institutions to determine compliance with the requirements of this chapter." 31 C.F.R. § 1010.810(b). However, within the *same regulation,* FinCEN expressly retained "[o]verall authority for enforcement and compliance," including the *exclusive* "[a]uthority for the imposition of civil penalties for violations of" the BSA and its implementing regulations. *See id.* § 1010.810(a), (d); 52 Fed. Reg. at 11,440 cmt. 19.

In fact, the SEC admitted it has received no delegation of authority to enforce the BSA:

[The SEC] possesses "no documents reflecting any grants of authority to [the SEC] from FinCEN, the United States Department of the Treasury, or other governmental authority to pursue an enforcement action, including but not limited to seeking penalties or other remedies, for violations of the BSA against broker dealers or other financial institutions, including but not limited to the instant Action against Alpine" . . . .

(SEC's Response to Alpine's Request for Production No. 26, SOF No. 1 (citation omitted).) For that matter, the SEC has also admitted it did not consult or even communicate with FinCEN in relation to the substantive allegations in this case, confirming it "did not discuss any specific SARs or their content, and did not discuss interpretation of FinCEN guidance with individuals at FinCEN in connection with this case at any time." (*See* SEC Letter, December 22, 2017, at 5; SOF No. 2.) The SEC is thus truly, and admittedly, acting *ultra vires.*

This specific allocation and division of authority by FinCEN is plain and purposeful, and designed to ensure consistency of application. Provisions of § 1010.810 manifestly delineate the rights and duties that accompany the delegation of authority *to examine* for compliance with the BSA. Simply, an agency delegated examination authority has: (1) the power to "examine any books, papers, records or other data of domestic financial institutions relevant to the recordkeeping or reporting requirements of this chapter," 31 C.F.R. § 1010.810(f); and (2) the duty to make periodic reports to the Director of FinCEN and to submit "[e]vidence of specific violations of any of the requirements of this chapter" to the Director of FinCEN. *Id.*

10

§ 1010.810(e).  No additional powers from the delegation of examination authority can be reasonably inferred from the language of § 1010.810.

FinCEN itself has repeatedly emphasized its enforcement authority and explained the extent and purpose of its delegation of "examination" authority.  For example, in a Report to Congress, FinCEN stated:

> FinCEN has retained the authority to pursue civil enforcement actions against financial institutions for non-compliance with the Bank Secrecy Act and the implementing regulations.  Under the Bank Secrecy Act, FinCEN is empowered to assess civil monetary penalties against, or require corrective action by a financial institution committing negligent or willful violations of the Bank Secrecy Act.  Generally, FinCEN identifies potential enforcement cases through:  (1) referrals from the agencies examining for Bank Secrecy Act compliance; (2) self-disclosures by financial institutions; and, (3) FinCEN's own inquiry to the extent it becomes aware of possible violations.

(*See* Alpine's SOF No. 3.)  Similarly, in December of 2016, FinCEN stated:

> FinCEN is responsible for the overall administration and enforcement of the BSA. Although it delegates BSA compliance examination authority to other federal regulators, FinCEN retains enforcement authority, including the authority to impose CMPs [civil monetary penalties] for violations.  FinCEN investigates potential BSA violations or deficiencies referred by federal and state regulators, as well as those referred by its own Enforcement Division.  After investigating a BSA case referral, FinCEN determines which enforcement action to pursue, if any.

(Alpine's SOF No. 4.); *see also* Alpine's SOF Nos. 5-9 for additional, similar statements by the Treasury.)

These statements, which track the language of § 1010.810, highlight the procedures applicable to identification of violations of the BSA.  If the SEC, pursuant to its examination authority, believes that Alpine or any other firm subject to the SEC's jurisdiction violated the BSA, it must refer the matter to FinCEN for enforcement, it may not pursue the action itself.  If FinCEN elects not to take enforcement action or impose penalties, that is within its sole

discretion.  *See* 31 C.F.R. § 1010.810(a), (d).  Unquestionably, there was an intent to separate examination authority from enforcement authority, and to withhold the latter from the SEC.[5]

That the SEC was imbued only with examination authority, not enforcement authority, is evident also from the explicit delegations of authority contained in other provisions of the BSA and its implementing regulations.  For example, in 31 U.S.C. § 5321(e), Congress authorized the Secretary to delegate "any authority of the Secretary to assess a civil money penalty under this section on depository institutions (as defined in section 3 of the Federal Deposit Insurance Act) to the appropriate Federal banking [] agencies . . . ."  31 U.S.C. § 5321(e)(1).  Similarly, 31 C.F.R. § 1010.810(g) "redelegates" the "authority to enforce" provisions of 31 U.S.C. § 5314 and 31 C.F.R. §§ 1010.350 and 1010.420 from FinCEN to the Commissioner of the IRS, including, to "assess and collect civil penalties under 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820" and "investigate possible civil violations of these provisions."  31 C.F.R. § 1010.810(g).  That these provisions expressly grant certain agencies authority to enforce the BSA and seek penalties is compelling evidence that there was no intent to grant such authority to the SEC.

Given the absence of any delegation of enforcement authority to the SEC in the BSA or its implementing regulations, it lacks the ability to a claim and penalties for a violation of the BSA.  *See, e.g.*, *Cudahy Packing*, 315 U.S. at 364; *Halverson*, 129 F.3d at 185; *Giordano*, 416 U.S. at 513; *Shook*, 132 F.3d at 783.  Not only is the SEC an external agency not located in the Treasury Department,[6] but also there is not even an attempt by Congress, the Secretary, or

---

[5]  *See, e.g.*, *Cudahy Packing*, 315 U.S. at 364 ("[T]he grant of authority to delegate the power of inspection, and the omission of authority to delegate the subpoena power, shows a legislative intention to withhold the latter.").  Moreover, under the canon *expressio unius est exclusio alterius*, that FinCEN delegated only the authority to examine broker-dealers to the SEC shows an intent to prevent the SEC from exercising any other authority.  *Halverson*, 129 F.3d at 185.

[6]  *See Shook*, 132 F.3d at 783 (rejecting argument that agency could re-delegate authority granted by Congress to outside agency, and observing "it would be unusual, if not unprecedented, for Congress to authorize the Board of Education to delegate its own governing authority, its policymaking function, to another outside multi-member

FinCEN to delegate BSA enforcement authority to the SEC. The SEC cannot unilaterally usurp for itself authority delegated to FinCEN to create a plenary right to bring an enforcement action to seek remedies for alleged BSA violations; it may only examine broker dealers for BSA compliance.

### B.     The SEC Cannot Use Rule 17a-8 to Pursue Alleged Violations of the BSA.

The SEC contends, however, that it is entitled to bring this action because Rule 17a-8 requires broker-dealers "to comply with the recordkeeping, retention and reporting obligations of the BSA and its implementing regulations."  (SEC Complaint, ¶ 2; SEC's Br. 4-5.)  The SEC contends that because "'[t]he SEC adopted rule 17a-8 in 1981 under the [Exchange Act], which enables SROs, subject to SEC oversight, to *examine* for BSA compliance,'" it has the authority to bring a civil enforcement action for violation of "FinCEN's SAR regulations pursuant to Rule 17a-8."  (SEC's Br. 5 (quoting 67 Fed. Reg. at 44,049 (emphasis added).)

The SEC offers no authority to support this claim.[7]  Further and as demonstrated below, this action is plainly one alleging violations of the BSA and its pursuit by the SEC is unauthorized.  In addition, a claim for a violation of the provisions of the BSA is not within the scope of the "books and records" provision of Rule 17a-8.  In fact, even if the SEC promulgated a rule that expressly conferred authority on it to pursue purported violations of the BSA, that rule would be invalid as beyond the scope of the authorization conferred by Section 17(a) *and* as contrary to the authorization that exists under the BSA.  The SEC cannot supplant FinCEN as the delegated and appropriate agency in terms of both interpretation and enforcement of the BSA.

---

body. That sort of delegation is inconsistent with the grant of overall authority to the Board of Education wholly apart from any negative implication arising from the statute's express authority to delegate to the Superintendent.").

[7] The SEC cites a single *settled,* and thus unlitigated, SEC administrative action, in which the issue of the SEC's authority was never even raised. (*See id.* citing *In re Wells Fargo Advisors, LLC*, Rel No. 82054 (Nov. 13, 2017)). "[T]he mere promulgation of a regulation, without a concomitant exegesis of the statutory authority for doing so, obviously lacks 'power to persuade' as to the existence of such authority." *Adamo Wrecking Co. v. U.S.*, 434 U.S. 275, 287 n.5 (1978).

### 1.     This Action is Predicated on Allegations of Violations of the BSA.

First, the SEC's assertion that it is *not*, in this action, alleging violations of the BSA is a transparent attempt to elevate form over substance, impermissible in any number of contexts but certainly where it seeks to circumvent an entire statutory structure and a specific Congressional delegation of authority.  "It is well settled that labels placed on allegations are not controlling. It matters not what name a plaintiff gives to its cause of action: the substance of the factual allegations overrides the form."  *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (Stein, J.).  The substance of the SEC's allegations demonstrate that this is not actually a case that arises under Section 17(a) or, indeed, the Exchange Act at all.  Rather, this case is about Alpine's compliance with the SAR requirements of the BSA.  In the SEC's own words, "[t]his case concerns Alpine's practices relating to filing [SARs] with the U.S. Treasury Department's Financial Crimes Enforcement Network."  (Complaint, at ¶ 1; *see also* SEC's Opposition to Alpine's Motion to Dismiss, Dkt. 30, at p. 6 ("This case of first impression concerns the inadequacy of a broker-dealer's report of suspicious transactions to [FinCEN].").

The substantive allegations in the SEC's Complaint allege discrete violations of the SAR regulations promulgated by FinCEN under the BSA; specifically, 31 C.F.R. § 1023.320.  (SEC's Complaint, at ¶¶ 1, 3-4, 11-13, 28-43, 46.)  Aside from nominal references to Section 17(a) and Rule 17a-8, the SEC's substantive allegations are indistinguishable from allegations one would expect in an enforcement proceeding by FinCEN.

The Second Circuit relied on a substance-over-form rationale in analogous circumstances to hold that a plaintiff's claim under the False Claims Act ("FCA") was barred by the Internal Revenue Service's ("IRS") "exclusive jurisdiction over tax matters" and a statutory "Tax Bar," which states that the FCA "'does not apply to claims, records, or statements made under the

Internal Revenue Code of 1986.'"  *U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 152-53, 157 (2d Cir. 2004) (quoting 31 U.S.C. § 3729(e)).  The plaintiff argued that his claim did not arise under the Tax Code because it was premised on amounts the Government lost through a fraudulent scheme from "the wrongful purchase of interest-bearing federal securities in lieu of zero-interest [U.S. Treasury State and Local Government] bonds."  *Id.* at 153. The Second Circuit rejected this argument, describing it as relying on a "false distinction."  *Id.* at 154-55.  The Second Circuit reasoned:

> Though, as he has characterized his claim in the complaint, [plaintiff] does not seek to collect taxes . . . **the very basis for [plaintiff's] case depends entirely on a purported violation of the Tax Code** – that is, [defendant's] claims are false claims insofar as the Government is concerned precisely because (and only because) they violate the Tax Code. Second . . . the IRS has authority to recover the precise amounts [plaintiff] is seeking in this action. . . .
>
> In fact, at oral argument, [plaintiff] acknowledged that in the absence of a violation of the Tax Code, he cannot prevail, as there would be no 'false' claim insofar as the FCA is concerned.

*Id.* at 153-54 (emphasis added).  The Court thus held that the alleged violations underlying plaintiff's claim "fall[] within the IRS's jurisdiction to remedy," and could not be pursued under the FCA.  *Id.* at 156.

Similarly, in the present case, the "very basis" of the SEC's case depends entirely upon a purported violation of the BSA and its implementing regulations.  Paragraph 46 of the SEC's Complaint is illustrative:

> As detailed above, Alpine violated Exchange Act 17(a) and Rule 17a-8, by: failing to file SARs as required by the BSA and its implementing regulations, filing SARs that do not comply with the BSA and its implementing regulations, and failing to maintain and/or retain SAR documentation as required by the BSA and its implementing regulations.

(SEC's Complaint, ¶ 46.)  The substance of the alleged violations at issue thus fall within FinCEN's "jurisdiction to remedy," not the SEC's.

## 2. An Interpretation of Rule 17a-8 that Permits an Action for BSA Violations Is Contrary To Congressional and FinCEN Delegation.

To the extent that the Court agrees with the SEC that Rule 17a-8 permits this action because it references the BSA "reporting" requirement, that Rule would collide with the express delegation of authority associated with the BSA and violate firmly established authorities concerning agency jurisdiction. As previously discussed, a "federal agency" has "'*only* those authorities conferred upon it by Congress.'" *Natural Res. Def. Council*, 355 F.3d at 202 (emphasis in original) (citation omitted). It "may not confer power on itself." *Louisiana Pub. Serv.*, 476 U.S. at 374.

Clearly Congress did not delegate to the SEC any authority to pursue civil enforcement actions, penalties and injunctions. The Treasury Secretary deliberately addressed and delegated certain authority relating to the BSA, specifically not delegating any enforcement authority to the SEC. The SEC cannot, through passage or interpretation of its own administrative rule, hijack Congress's intended delegation of authority or confer on itself authority that Congress withheld. To the contrary, "it is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction.'" *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 650 (1990) (citation omitted); *accord SEC v. Sloan*, 436 U.S. 103, 119 (1978) (same); *see also* 5 U.S.C. §§ 558(b), 706(2)(c).

These precise contours of rule-making, examination and enforcement authority are not hypertechnical or happenstance. It is FinCEN that is tasked with the development and oversight of this program. Likewise, it is FinCEN that has responsibility for interpreting its requirements and enforcing its provisions in ways that are *consistent* with the actual and practical use of SAR filings, and with its goals of enhancing transparency in currency transactions. It is FinCEN that has, for decades, struggled with what it viewed as improper interpretations of the reporting

16

requirements that caused financial institutions to engage in reflexive "defensive" SAR filings, and has sought to emphasize that the SAR filing process is a subjective one, that should be predicated on actual analysis as opposed to useless submissions intended simply to avoid an accusation of failure to file.  Given its role in relation to the SAR program, FinCEN is best able to determine enforcement priorities that are consistent with its needs and with its desire to maintain cooperation with the private sector.  The SEC, on the other hand, may view SARs from a completely different perspective, as an enforcement device to further its own priorities, and seek to inject into that program issues associated with particular securities transactions that may or may not correspond to FinCEN's interests.  Particularly where, as here, the SEC's interpretation of a BSA violation is materially different from that espoused by FinCEN, the SEC should not be permitted to tread on FinCEN's authority.

3. **An Interpretation of Rule 17a-8 that Permits an Action for Violation of the BSA Would Be Impermissible Because It Would Exceed the Authority Conferred by Section 17 of the Exchange Act.**

An interpretation of Rule 17a-8 that would imbue the SEC with BSA enforcement authority contravenes the pertinent provisions of the BSA *and* exceeds the authorization contained with Section 17(a).  Here, Congress *did not* enact Rule 17a-8; it is the result of administrative rulemaking by the SEC.  That rulemaking authority cannot exceed the scope and intent of the statute under which it is promulgated.[8]  The SEC obviously could not, for example,

---

[8]  As the Fifth Circuit observed in *Central Forwarding, Inc. v. I.C.C.*, 698 F.2d 1266 (5th Cir. 1983):  A grant of "general rulemaking authority" does not "empower[] an agency – established to enforce and carry out a congressional act – to promulgate regulations which run far afield from the specific substantive provisions of the act."  Rather, "general rulemaking provision should be read as a kind of necessary and proper clause" that "grants considerable powers to enforce the substantive mandates of federal law . . . but is tied to and limited by those specific substantive provisions.  *It does not open whole new horizons on the regulatory landscape.*" *Id.* at 1277 (emphasis added).

pass a rule that said, to put it bluntly, that the SEC is permitted to pursue an enforcement action under the BSA.[9]  Yet that is precisely the claim asserted by the SEC in this case.

Section 17(a) of the Exchange Act contains no reference to the BSA or SAR filing requirements; it was enacted 36 years before the BSA, and nearly 60 years before the SAR requirements were added to the BSA.  In fact, Section 17(a) does not address substantive violations of *any* reporting obligation and, given its limited purpose and impact, does not contain any of the scienter requirements that are an inherent component of reporting violations.  It is essentially the record-keeping provision of the Exchange Act.  The Title of Section 17 – "ACCOUNTS AND RECORDS, EXAMINATIONS OF EXCHANGES, MEMBERS, AND OTHERS" – reflects this basic purpose.  Section 17(a) reflects the delegation of authority by Congress to the Commission to require broker-dealers to keep and preserve at least one copy of all documents, including all correspondence, memoranda, papers, books, notices, accounts and other such records as shall be made or received by it in the course of its business and in the conduct of its self-regulatory activity.  *See, e.g.*, *Boruski v. SEC*, 340 F.2d 991, 992 (2d Cir. 1965).

That record keeping provision, Section 17(a), was plainly not enacted or designed to authorize the SEC to issue a rule allowing it to enforce substantive reporting violations of a different statutory scheme, enacted decades later, and which is administered by a separate agency through an express delegation of power by Congress to that agency.  In *American Bankers Association v. S.E.C.*, the court rebuffed an analogous attempt by the SEC to issue a regulation that would have brought "banks" within the definition of "broker dealer."  804 F.2d 739, 754-55

---

[9] If the SEC were presumed to have such authority, there would be nothing to stop the SEC from using Section 17(a) as a springboard to acquire plenary authority to regulate and enforce every statute passed by Congress as a books-and-records violation under the Exchange Act, impermissibly giving the SEC "'virtually limitless hegemony.'"  *Halverson*, 129 F.3d at 186-87 (citation omitted).

(D.C. Cir. 1986).  The court held that "[t]he SEC cannot use its definitional authority to expand its own jurisdiction and to invade the jurisdiction of other agencies, including the Board of Governors" of the Federal Reserve Board.  *Id.*

Any rule promulgated by the SEC under Section 17(a), including Rule 17a-8, must conform to the purpose and effect of the statutory provision under which it is authorized. *See Cent. Forwarding,* 698 F.2d at 1277, n.12, *supra.*  Properly viewed within the contours of Section 17(a), Rule 17a-8 stands as one of more than twenty books and records provisions titled "Preservation of Records and Reports of Certain Stabilizing Activities."  *See* 17 C.F.R. §§ 240.17a-1 - 17a-25.  It was issued well before the existence of the SAR filing requirements, when the BSA required that certain financial institutions make reports and retain records regarding straightforward currency transactions.  46 Fed. Reg. 61,454 (Dec. 19, 1981).  In setting forth the purpose and justification for the rule, the Commission did not contend that it supplanted or incorporated the substantive provisions of the BSA.  Rather, it addressed "compliance by broker and dealers with *the recordkeeping and retention requirements* of the Currency Act." *Id.* (emphasis added).  In articulating the background of the proposed Rule, the Commission described the provisions of the "Currency Act" and implementing Treasury regulations.  The Commission then explained that the Treasury regulations "require financial institutions to make and preserve certain records."  *Id.*  The Commission concluded as follows:

> Adoption of this rule by the Commission will clarify the authority of the [self-regulatory organizations] to assure compliance by broker and dealers **with the recordkeeping and retention requirements** of the Currency Act.

*Id.* (emphasis added).

Against that backdrop, the provisions of the BSA were amended in 2002 to extend the SAR filing requirement to broker-dealers.  67 Fed. Reg. at 44,048.  At that time, the SEC did not engage in *any* of the administrative rulemaking procedures that would have been required to

promulgate a substantial alteration to the existing record-keeping requirements.[10]  The SEC conducted none of the procedures that would have been required to accomplish the kind of massive alteration of Rule 17a-8 that would have been effected if,  in fact, the SEC suddenly acquired enforcement authority over substantive SAR reporting requirements.  There was none of the requisite consideration of the impact of such a revision, no notice and comment period, and no consideration given to what would have been one of the most startling aspects of the revision: that the SEC was empowered to bring an action for a SAR violation under 17a-8 and to do so without reference to the scienter and enforcement provisions contained within the BSA.  In fact, the *only* publication of Rule 17a-8 in the Federal Register, after its original adoption in 1981, occurred in 2011 and addressed the technical change in the numbering of BSA regulations from Title 3 part 103 to Title 31 chapter X.[11]

Thus, at most, Rule 17a-8, by its title, terms and enabling statute, requires broker-dealers to make and keep records required by the Treasury Regulations for a prescribed period.  It does not, and should not, be expanded beyond its purpose to serve as a means by which the SEC can pursue a claim that a SAR filing is substantively deficient in one or more respects, or a claim based on a non-filed SAR.  The SEC cannot rewrite the statutory scheme to elevate Rule 17a-8 to a mechanism by which to pursue an enforcement action predicated on alleged violations of the SAR requirements of the BSA and its implementing regulations.

Finally, the difference in the penalty schemes between the Exchange Act and the BSA further demonstrates that Congress did not intend for Section 17(a) to enable the SEC to bring

---

[10]  *See generally New York State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001) (observing that under 5 U.S.C. § 553 of the APA, "[i]n most instances, agency rule[s] must be subjected to a notice and comment period before taking effect," including where the rule is "legislative" insomuch as it "create[s] new law, right or duties" (internal quotations and citations omitted)).

[11]  *See* 17 C.F.R. § 240.17a-8 (identifying the publication history of the rule as 46 Fed. Reg. 61,455 (Dec. 17, 1981), as amended at 76 Fed. Reg. 11,328 (Mar. 2, 2011)).

this action.  Although its claims are predicated on alleged violations of the SAR requirements

under the BSA, the SEC claims that it "need not prove scienter" under Section 17(a) and Rule

17a-8, and that it can establish a violation merely by "showing that Alpine failed to comply with

Chapter X of the BSA regulations" – i.e., through strict liability. (*See* SEC's Br. 5-6.) The SEC

also seeks civil money penalties under Section 21(d)(3) of the Exchange Act, (*see* SEC's

Complaint, at p. 20), which authorizes, *inter alia,* "First Tier" penalties against a corporation up

to $80,000 (adjusting for inflation) for each violation of a statute or rule under the Exchange Act

on a strict liability basis.  *See* 15 U.S.C. § 78u(d)(3)(B)(i).

In the BSA, by contrast, Congress expressly imposed a requirement to show scienter or

negligence as a predicate to imposing civil liability for violations of the BSA or its implementing

regulations and established penalty caps.  *See* 31 U.S.C. § 5321(a)(1) (establishing "a civil

penalty of not more than the greater of the amount (not to exceed $100,000) involved in the

transaction (if any) or $25,000" (emphasis added)); *id.* § 5321(a)(6).

The conflict between these provisions further undermines the SEC's position.  Simply

because Congress gave the SEC general authority in Section 17(a) to issue books-and-records

regulations for broker dealers, does not mean Congress intended to allow the SEC to circumvent

the elements and comprehensive remedial structure built into the BSA, as well as the specific

delegations of authority therein, and instead pursue alleged BSA violations under the general

provisions of the Exchange Act.  If this *were* Congress's intent, it needed to say so plainly.  "A

frequently stated principle of statutory construction is that when legislation expressly provides a

particular remedy or remedies, courts should not expand the coverage of the statute to subsume

other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the

negative of any other mode.'"  *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414

U.S. 453, 458 (1974) (citation omitted).[12]  Moreover, "where a specific provision conflicts with a general one, the specific governs."  *Edmond v. United States*, 520 U.S. 651, 657 (1997).  The SEC's reliance on Section 17(a) and Rule 17a-8 as the source of its authority to bring this enforcement action thus is misplaced.

For the foregoing reasons, the SEC lacks jurisdiction to pursue an enforcement action predicated on alleged violations of the SAR requirements of the BSA and its implementing regulations. Because these are the bases of the allegations brought by the SEC, this action is *ultra vires* and cannot proceed. *See* 5 U.S.C. §§ 558(b), 706(2)(c); *Haitian Ctrs.*, 823 F. Supp. at 1046. The Court should grant summary judgment for Alpine and deny summary judgment for the SEC.

## II. THE SEC'S CLAIM ALSO FAILS AS A MATTER OF LAW BECAUSE THE SEC AILED TO ALLEGE THE NECESSARY ELEMENTS OF WILLFULNESS OR NEGLIGENCE

Even assuming *arguendo* that the SEC has the authority to pursue this action against Alpine, the SEC's claim fails as a matter of law for the independent reason that the SEC has failed to allege the necessary elements to state a claim seeking remedies for a violation of the SAR requirements of the BSA and its implementing regulations.  Specifically, the SEC has failed to allege that Alpine "willfully" or "negligently" violated the BSA. (*See* SEC's Complaint, generally.)  Alpine is therefore entitled to judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), dismissing the SEC's claim.

---

[12]  *See also Secs. Inv. Prot. Corp. v. Barbour*, 421 U.S. 412, 419 (1975) ("The express statutory provision for one form of proceeding ordinarily implies that no other means of enforcement was intended by the Legislature."); *L.P. Steuart & Bros. v. Bowles*, 322 U.S. 398, 404 (1944) ("[I]t is for Congress to prescribe the penalties for the laws which it writes. To would transcend both the judicial and the administrative function to make additions to those which Congress has placed behind a statute."); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) (recognizing that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be wary of reading others into it"); *American Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) (holding the Department of Transportation exceeded its statutory authority in promulgating a rule imposing monetary sanctions that conflicted with the "precise conditions" specified by Congress for when monetary sanctions would be available for violation of the ADA, and stating "[b]y specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.").

As indicated, the BSA and its implementing regulations require a showing of willfulness or negligence to establish liability for penalties for violations of the BSA or its implementing regulations. *See* 31 U.S.C. § 5321(a)(1), (6); *see also* 31 C.F.R. § 1010.820(f), (h). To state a claim seeking a penalty for violation of the BSA, therefore, the government must plead and prove that the defendant's violation was done willfully or negligently.

In *United States v. Pomerantz*, 2017 WL 2483213 (W.D. Wash. June 8, 2017), the government sought to "reduce to an enforceable judgment a civil penalty assessed against [defendant] by a delegate of the Secretary of Treasury" under 31 U.S.C. § 5321(a)(5). *Id.* at *4. The court stated that in order to state a claim the Government must "allege facts supporting the inference that [defendant] acted 'willfully' in his failure to file." *Id.* at *5. "Generally, a 'willful' failure for the purposes of the Bank Secrecy Act is 'an intentional violation of a known duty to report.'" *Id.* (quoting *Ratzlaf v. United States*, 510 U.S. 135, 154 n. 5 (1994)).[13] The court held that even though the government included rote allegations that the defendant's violation of the BSA "was willful within the meaning of 31 U.S.C. § 5321(a)(5)," this was insufficient to prevent dismissal because they are "precisely the 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' that are insufficient to state a claim." *Pomerantz*, 2017 WL 1483213, at *6 (citation omitted).[14]

Here, the SEC did not even provide a "threadbare" or "conclusory" allegation in its Complaint that Alpine "willfully" or "negligently" violated the BSA. Nor did the SEC provide

---

[13] In *Ratzlaf*, the Supreme Court observed that the "omnibus 'willfulness' requirement, when applied to other provisions in the same subchapter, consistently has been read by the Courts of Appeals to require both 'knowledge of the reporting requirement' *and* a 'specific intent to commit the crime,' *i.e.*, 'a purpose to disobey the law.'" 510 U.S. at 141 (emphasis in original) (citation omitted).

[14] *See also United States v. One (1) Lot of Twenty-Four Thousand Nine Hundred Dollars ($24,900.00) in U.S. Currency*, 770 F.2d 1530, 1531 (11th Cir. 1985) (affirming dismissal of the government's complaint seeking civil forfeiture under the BSA for failure to allege that the defendant acted with knowledge of the reporting requirements, as required by the statute).

any argument, let alone undisputed evidence, that Alpine acted "willfully" or "negligently" in its Summary Judgment Memorandum. This is fatal to both the SEC's Complaint and Motion.

The SEC cannot proceed on a theory of strict liability in this action, notwithstanding its nominal reliance on Rule 17a-8. The scienter and fault requirements were put into the BSA by Congress, which "'took this regulatory statute out of the ranks of strict liability . . . .'" *One Lot*, 770 F.2d at 1534 (citation omitted). The SEC cannot use Rule 17a-8 to transform the BSA into a strict liability statute when the SEC brings an action and thereby avoid the requirements built into the statute by Congress. *See, e.g.*, *L.P. Steuart*, 322 U.S. at 404; *American Bus*, 231 F.3d at 5, *together with other authorities discussed at* n.12, *supra.* Any contrary interpretation of Rule 17a-8 would invalidate it. *See In re Watson*, 161 F.3d 593, 598 (9th Cir. 1998) ("A federal regulation in conflict with a federal statute is *invalid* as a matter of law."); *cf. Chevron*, 467 U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

In fact, it defies logic that the SEC, by virtue of Rule 17a-8, should be able to establish liability for an alleged BSA violation upon a lesser showing than FinCEN – the agency charged with overall authority for enforcement and compliance with the BSA – would be required to make. There is no justifiable basis to place the SEC in such a unique position, particularly where the SEC claims Rule 17a-8 requires broker dealers to comply *with the BSA* and its implementing regulations, and where the BSA's "civil and criminal penalties attach only upon violation of regulations promulgated by *the Secretary*." *California Bankers*, 416 U.S. at 26 (emphasis added). The SEC cannot interpret its own administrative rule to allow it to bypass the scienter and fault requirements of the BSA and regulations implemented by the Secretary just because these requirements make the SEC's case harder to prove.

Furthermore, any interpretation that reads out the scienter or fault requirements in the BSA would also deprive Alpine of its constitutional right to fair notice. "A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). "[A] scienter requirement may mitigate a law's vagueness with respect to adequacy of notice that specified conduct is proscribed." *United States v. Heyman*, 794 F.2d 788, 792 (2d Cir. 1986). In *United States v. Thakkar*, 721 F. Supp. 1030 (S.D. Ind. 1989), the court held that the scienter element in the BSA, specifically, helps alleviate any vagueness concerns in the statute. *Id.* at 1033-34.

To accept the SEC's conclusion that scienter or fault are not elements of a BSA violation when the SEC brings an action is to sanction inconsistent and discriminatory enforcement. It would allow the SEC – and the SEC alone – to punish broker dealers under a different and lesser standard than every other person or entity subject to the BSA. It would also allow innocuous violations to be treated with the same severity as intentional ones. Given that the BSA expressly requires either willfulness or negligence as a predicate to liability, Alpine is not given fair notice or afforded the due process required by the Constitution if the SEC is permitted to affix liability and obtain remedies for alleged violations of the BSA on a lesser, strict liability standard.

Accordingly, the SEC's claim fails as a matter of law for failure to allege the necessary elements of willfulness or negligence to state a claim seeking remedies for violation of the BSA.

## CONCLUSION

For the foregoing reasons, the Court should deny the SEC's Motion for Partial Summary Judgment and grant Alpine's Cross-Motions for Summary Judgment and/or Judgment on the Pleadings, dismissing the SEC's complaint with prejudice.

Dated: New York, New York
      January 19, 2018

Respectfully submitted,

By:   /s/ *Maranda E. Fritz*
      Maranda E. Fritz
      THOMPSON HINE LLP
      335 Madison Avenue, 12th Floor
      New York, New York 10017-4611
      Tel. (212) 344-5680
      Fax (212) 344-6101
      Maranda.Fritz@thompsonhine.com

      Brent R. Baker (BB 8285)
      Aaron D. Lebenta (*Pro Hac Vice*)
      Jonathan D. Bletzacker (*Pro Hac Vice*)
      CLYDE SNOW & SESSIONS
      One Utah Center
      201 South Main Street, Suite 1300
      Salt Lake City, Utah 84111-2216
      Telephone 801.322.2516
      Facsimile 801.521.6280
      brb@clydesnow.com
      adl@clydesnow.com
      jdb@clydesnow.com

      *Attorneys for Defendant Alpine Securities*
      *Corporation*