Brent R. Baker (5247)
Aaron D. Lebenta (10180)
Jonathan D. Bletzacker (12034)
**CLYDE SNOW & SESSIONS**
One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone 801.322.2516
Facsimile 801.521.6280
Email: brb@clydesnow.com
       adl@clydesnow.com
       jdb@clydesnow.com

Maranda E. Fritz (*Pro Hac Vice Pending*)
**THOMPSON HINE**
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Tel. 212.344.5680
Fax 212.344.6101
Email: Maranda.Fritz@thompsonhine.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALPINE SECURITIES CORPORATION, a Utah corporation, SCOTTSDALE CAPITAL ADVISORS, an Arizona corporation<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br>Defendant. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**<br><br><br>Case No. 2:18-cv-00504-CW<br><br>Judge Clark Waddoups |

Plaintiffs Alpine Securities Corporation ("Alpine") and Scottsdale Capital Advisors

("SCA") (collectively, "Plaintiffs"), submit this Memorandum in Opposition to Defendant United

States Securities and Exchange Commission's ("SEC") Motion for Stay of Proceedings.

## INTRODUCTION

The SEC has been unlawfully enforcing the suspicious activity reporting ("SAR") regulations of the Bank Secrecy Act under Exchange Act Rule 17a-8, 17 C.F.R. § 240.17a-8. Plaintiffs Alpine and Scottsdale have thus filed a complaint in this Court asserting claims that are statutorily available to any party aggrieved by unlawful agency action: that the SEC's current interpretation of Rule 17a-8 constitutes a plain and incontrovertible violation of the Administrative Procedures Act ("APA"). More specifically, the Complaint asserts that the SEC failed to abide by the notice and comment rulemaking pursuant to 5 U.S.C. § 706; that its actions were arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A); that the SEC failed to comply with both the Regulatory Flexibility Act and the APA, in its interpretation and purported enforcement of Rule 17a-8; and that the SEC failed to conduct the required analyses concerning the costs, benefits and burdens its supposed absorption of and enforcement authority over the new statutory scheme established by the SAR provisions of the BSA.

That Complaint squarely and properly presents the substantial issues associated with the SEC's current assertions regarding Rule 17a-8. The SEC's conduct in this case is actually far more flagrant than exists in a typical case under the APA; while ordinarily it is the sufficiency of the agency procedures that are challenged, here there is no dispute that the SEC engaged in absolutely no rulemaking, and views itself as exempt from that requirement in relation to Rule 17a-8. Resolution of these issues will require consideration not only of the provisions of the APA but also examination of the extent of the Congressional authority conferred by Section 17 of the Securities Exchange Act, 15 U.S.C. § 78q(a), and the history and purpose of Rule 17a-8.

As demonstrated in Alpine's Motion for Preliminary Injunction in this Court, and substantial additional supporting materials including a further declaration from its expert witness who worked at FinCEN, a comprehensive review of each of those provisions and the legislative and regulatory history surrounding them confirms that Rule 17a-8 could not and does not have the remarkably elastic and expansive impact claimed by the SEC.[1]

The SEC, by this Motion and by a similar motion in the United States District Court for the Southern District of New York ("New York Court"), asks both courts to insulate it from these claims.  The SEC insists it is entitled to that protection by virtue of the fact that it filed an enforcement action against Alpine alleging that Alpine violated the SAR regulations of the BSA (the "New York Action"). Notably, the SEC's enforcement action in New York was an unabashed instance of forum shopping by the Denver office of the SEC, which brazenly acknowledged that it decided to go to New York to sue a firm located in Salt Lake City, Utah, at tremendous additional cost to Alpine, to send a message to other broker-dealers on Wall Street.

Not satisfied with preventing Alpine from defending itself in its home state, the SEC now seeks to also deprive Plaintiffs from exercising their statutory right to judicial review of the SEC's conduct under the APA, by asking the New York Court to enjoin both Alpine and SCA – who is not even a party to the New York Action – from pursuing these claims because the SEC filed an enforcement action against Alpine in New York first.  On that basis, the SEC insists that this Court stay further proceedings on the APA complaint indefinitely: "until the New York

---

[1] Alpine has further supporting materials to provide in support of its motion, including a further declaration from its expert witness, Beverly Loew, a former FinCEN employee, executed on July 6, 2018.  Ms. Loew's declaration confirms, based on her experience at FinCEN, what is evident from the regulatory structure of the BSA and the Exchange Act: that neither Congress nor the Treasury Department ever intended to give the SEC with enforcement authority over the BSA.

court rules on the Commission's motion for injunctive relief, *and until any available appeal(s) of that ruling have been exhausted*."  (SEC's Motion to Stay, at 6 (emphasis added.))

The SEC's request for an indefinite stay of proceedings in this action should be denied. Alpine recognizes that the SEC's improper request for an injunction from the New York Court will likely impact this Court's decision.  However, that the SEC has filed an enforcement action in no way immunizes it against facially valid claims under the APA asserting that the SEC is acting without proper authority – whether those claims are filed by Alpine, SCA, or any other party aggrieved by that action.  The SEC has not made the requisite showing to warrant a stay, i.e., that it would suffer a clear hardship that outweighs the prejudice to Alpine and SCA from not being able to pursue their statutory rights to judicial review of the SEC's actions.  This is particularly true where the stay sought could span years (through all appeals) and would purport to remain in effect even if the SEC loses request for an injunction in the New York Action.

Nor is such relief warranted by the first-to-file rule for the simple reason that it is not applicable.  Plaintiffs have been very candid with the Court about the pendency of the New York Action, and the issues raised there.  However, this action asserting violations of the APA is not a "competing" or duplicative proceeding, such as would be subject to the "first-filed" rule.  In addition to having different parties, this case presents affirmative claims concerning the SEC's compliance with critical and specific requirements imposed by the APA and related statutes that are not present *and could not be asserted* in the New York Action because the Exchange Act bars counterclaims and third party claims in enforcement actions.  The relief sought here – a declaratory judgment that the SEC violated the APA and an injunction against it enforcing the SAR requirements of the BSA under Rule 17a-8 – is entirely different than any relief sought, or

issues presented, by the SEC's fact-intensive claims against Alpine in New York for alleged substantive violation of the SAR regulations. This case thus seeks to vindicate different rights, policies and interests from the New York Action, which will not be resolved in the New York Action. In fact, far from warranting a stay, the principles of equity and efficiency support the view that *this case* should proceed first. The question of the SEC's authority to pursue alleged violations of the SAR regulations should, as a matter of logic and procedure, be resolved *before* further resources are devoted to the SEC's novel theories of alleged SAR violations by Alpine.

The SEC is actually seeking application of a first-filed rule *not* based on identity of claims but based solely on the fact that there is a single area of overlap, *i.e.*, Alpine has raised the SEC's failure to comply with the APA defensively in the New York Action. The SEC seems to suggest that there could possibly be some preclusive effect from New York Action and so, according to the SEC, Alpine (and apparently SCA also) should be the only firms in the country to be prohibited from asserting affirmative claims under the APA. This does not support the relief the SEC seeks. If the SEC actually thinks there is any ruling of the New York Court that could have preclusive effect in this APA action, it can and should argue that here. Plaintiffs pursued these claims as soon as became clear that the New York proceeding would not be an appropriate forum for the actual consideration of that critical APA issue, and to this point there appears to be no ruling from the New York Court that the SEC complied with the APA with respect to Rule 17a-8. Thus, neither principles of preclusion nor the first-to-file rule applies here.

Finally, the request for a stay of SCA's claims in this case fails for an additional reason: SCA is not a party to the New York enforcement action, and therefore cannot be enjoined by the New York Court. There is thus no basis for this Court to stay SCA's claims.

# ARGUMENT

I. **This Court Should Deny the Stay Because the First to File Rule Does Not Apply.**

The SEC asks this Court to stay this proceeding "until the New York court rules on the Commission's motion for injunctive relief, and until any available appeal(s) of that ruling have been exhausted." (SEC's Motion to Stay, at 6.) The SEC offers two justifications for its request for this lengthy and indefinite stay. First, the SEC claims that efficiency and economy would best be served by staying this action. Second, the SEC claims a stay is justified by the first-to-file rule. Neither argument has merit. The SEC's Motion should therefore be denied.

> A. **The SEC's Reliance on Bare Assertions of Purported Avoidance of Waste is Insufficient to Outweigh the Disadvantages to Plaintiffs from an Indefinite Stay of Proceedings.**

It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, the Tenth Circuit has recognized that such a motion calls "for balancing the competing interests on both sides." *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983); *Landis,* 299 U.S. at 254-55 (the power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

"In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make *a strong showing of necessity because the relief would severely affect the rights of others*." *Commodity Futures,* 713 F.2d at 1484 (emphasis added). "The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" *Id.* (quoting *Klein v. Adams & Peck,* 436 F.2d 337, 339 (2d

Cir.1971)). The Tenth Circuit continued, "these precautions are of particular importance where, as here, restraints on other courts are contemplated":

> When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases.

*Id.* (quotations and citation omitted). "Thus, the movant for an order staying the prosecution" of an action is "required to make a strong showing that the remedy [is] necessary for the movant and that the disadvantageous effect on others would be clearly outweighed." *Id.; accord Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.,* 206 F.3d 980, 987 (10th Cir. 2000) ("When applying for a stay, a party must demonstrate 'a clear case of hardship or inequity' if 'even a fair possibility' exists that the stay would damage another party." (citation omitted)). To enter a stay without such a showing is an abuse of discretion. *Commodity Futures,* 713 F.2d at 1484.

The SEC has failed to establish that "extreme circumstances" exist to deny Plaintiffs' right to proceed on their APA claims in this Court. In fact, the SEC does not even cite the applicable standard for obtaining such a stay, let alone attempt to demonstrate that it would suffer "a clear case of hardship or inequity" that "clearly outweigh[s]" the disadvantages Plaintiffs would suffer from the entry of an indefinite stay of proceedings that continues through any appeal of the New York Court's order – *a period that could span years. Id.* Instead, the SEC vaguely claims the "equities of the situation" support a stay of this case in favor of the New York Action because the "Commission and the New York Court have expended considerable resources litigating this case over the past year," and that "[r]equiring the Commission to litigate effectively the same matter simultaneously in two different fora would be wasteful, unnecessarily complicated, and inequitable." (SEC Motion to Stay, at 9.)

The SEC's claim that has limited "resources" not only strains credulity but also is not an "extreme circumstance" that warrants a stay. To the contrary, this case is *not* duplicative of the New York Action, for the reasons further demonstrated in Section B below, and the SEC is more than capable of addressing both its own enforcement action and a statutorily authorized claim arising from its failure to comply with the APA. No issue of judicial economy exists since the APA claim is more than facially sufficient and must be considered and resolved and are more appropriately resolved in this case and in this Court. Furthermore, "consideration[s] of judicial economy" should "rarely if ever lead to such a broad curtailment of access to the Courts." *Commodity Futures,* 713 F.2d at 1485. The SEC is subject to the APA and offers no compelling reason why it should be able to rely on supposed costs it has incurred in prosecuting a separate enforcement action against Alpine – an action it lacked the authority to bring in the first place – to avoid judicial review under the APA. Needless to say, Alpine, a *private* party, has also incurred enormous costs defending itself in a remote New York Court against the SEC's *ultra vires* claims. Thus, this purported hardship is at best neutral and does not "clearly outweigh" the "severe" prejudice to Plaintiffs' "right to proceed in court" on their claims in this case.

Additionally, similar to *Commodity Futures,* this case will "not [be] obviated" by any decision in New York. *Id.* The case in New York is an enforcement action that involves different parties and claims. SCA, for example, will not be bound by any judgment entered in New York and there is no affirmative claim that will be resolved in New York that the SEC violated the APA. Alpine, in fact, was precluded from bringing such a claim, or any

3

counterclaims, in the New York enforcement action by 15 U.S.C. § 78u(g).[2]  This Court, likewise, will not be bound by any decision of the New York Court or the Second Circuit.  And, principles of *res judicata*, if and when final judgment enters in New York, would not prevent either SCA (as a nonparty) or even Alpine from maintaining an APA claim in this Court that could not be brought in that action, and which is different in nature, time and scope from the SEC's claim in New York alleging that Alpine violated SAR provisions of the BSA.[3]  Stated otherwise, a stay is inappropriate and would provide no advantage to the parties or the Court because the New York Action will "not provide a complete resolution of th[is] federal action," as there is no possibility that an injunction will be entered in New York against the SEC enforcing the SAR regulations under Rule 17a-8.  *See Strich v. U.S.,* 2010 WL 2605020 at *1 (D. Colo., June 28, 2010) (stating that granting a stay would "be a serious abuse of discretion" where there was "incomplete identify of parties" in the two actions and where it was not an instance where, following a decision by a court in one action, the other court "will have nothing further to do in resolving any substantive part of the case." (quotations and citation omitted)).

      The SEC also claims that Plaintiffs "will suffer no prejudice from a stay "because neither is presently subject to an adverse monetary judgment or is at imminent risk of being subject to such a judgment." (SEC's Motion to Stay, at 9.)  This assertion is deeply misleading at best.  As

---

[2]  *See SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358, 367-68 (S.D.N.Y. 2016) (observing that Section 21(g) of the Exchange Act, 15 U.S.C. § 78u(g), precludes any "non-SEC party" from bringing a claim, including counterclaims, in an SEC enforcement action and that claims "against the SEC relating to this enforcement action must be brought, if at all, in another case.").

[3] *See* Restatement (Second) of Judgments § 26 (1982) (stating that the principles of merger and bar do not extinguish a claim or prevent it as serving as a basis "for a second action" when, *inter alia,* the "plaintiff was unable to . . . seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.")

the SEC well knows, the dispositive motion deadline is less than a week away in New York and will be concluded in August. That an adverse judgment will then issue, likely immediately, was presaged by the New York Court's remark that the SEC's burden on that motion is "not onerous" and its recent confirmation, in its denial of Alpine's request for interlocutory appeal, that the New York action will soon be over. (*See* SEC's Ex. 4, at 6.).

The SEC's argument also disregards the inherent prejudice Plaintiffs would suffer from a delay of their right to proceed in Court. *See Commodities Futures,* 713 F.2d at 1484 (describing a "delay in court proceedings" as relief that would "severely affect the rights of others"). Plaintiffs are entitled to consideration and decision by *this Court* on the merits of *their* claims against the SEC under the APA within a reasonable time period, regardless of what occurs with respect to Alpine in New York. *See* Fed. R. Civ. P. 1 (requiring the court and the parties to construe, administer and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding"). As demonstrated in Plaintiffs' Motion for Preliminary Injunction – to which the SEC has not responded – Plaintiffs will suffer irreparable harm unless an immediate injunction issues against the SEC.[4] The SEC asks this Court to not only ignore this harm, but to increase it by entering a stay that could last years, so that the SEC can continue, *unquestioned,* its unlawful efforts to enforce the BSA's SAR regulations against the nation's broker-dealers in the meantime.

There is thus no advantage for the Court or the parties to delaying this Court's consideration and decision on these issues. As indicated, the SEC does not seek a modest stay of proceedings here, but asks that it continue until all appeals of the New York Court's ruling are

---

[4] (*See* Plaintiffs' Motion for Preliminary Injunction, at pp. 23-24.)

exhausted. (SEC Motion, at 8.)  The SEC thus asks this Court to stay this proceeding even if it loses its Motion in New York, while it pursues an appeal.  This is improper.  *See Wodiuk v. Pueblo County Sheriff Dep't Officer Caitlin Graziano,* 2017 WL 2438993 at *9 (D. Colo., June 6, 2017) (observing that "a lengthy or indefinite stay of a civil lawsuit has potentially adverse consequences" because it amounts to "'a refusal to proceed to a disposition on the merits,'" and "'[e]ven if litigation may eventually resume, such stays create a danger of denying justice by delay.'" (citation omitted)). After all, "justice delayed is justice denied."  *See Johnson v. Rogers,* 917 F.2d 1283, 1285 (10th Cir. 1990).  The stay should be denied.

      **B.**    **The First-To-File Rule is Inapplicable and Fails to Justify a Stay of Proceedings in this Court.**

The SEC also argues that a stay of this case is justified by the "first-to-file rule."  This is an inadequate basis for a stay of proceedings where, as demonstrated above, the SEC has failed to establish a clear case of hardship from continuing in this case that outweighs the prejudice to Plaintiffs from a delay in their rights to proceed on their claims in their chosen forum.

Moreover, the first-to-file rule is inapplicable here because this case is not duplicative; it involves different parties and different claims and issues.  In fact, underscoring the distinctions, despite rejecting Alpine's arguments challenging the SEC's authority, New York Court did not rule on two critical issues in the present APA case:  (1) whether the SEC complied with the APA in connection with its purported attempt to enforce the SAR regulations under Rule 17a-8; or (2) the impact that the delegation of BSA authority solely to the Treasury Department had upon the SEC's attempt to enforce the SAR regulations under the Exchange Act. (*See* New York Court's Decisions, attached as Exs. 3 and 4 to the SEC's Motion to Stay.)

Alpine comprehensively addressed the flaws in the SEC's reliance on the first-to-file rule

6

in their Opposition Memorandum, filed July 9, 2018 in the New York Action to the SEC's Motion to Enjoin Prosecution, which included citation to Second Circuit authority refusing to apply the first-to-file rule where, as here: the matters were not duplicative because they involved different parties and claims, and where the claims in the purported second-filed case were not compulsory counterclaims in the first.  In the interests of economy, Plaintiffs will not repeat those argument here, but instead incorporate them by reference in its entirety.  A copy of that Opposition Memorandum is attached hereto as Ex. A for the Court's convenience.

However, to help illustrate the flaw in the SEC's argument, Plaintiffs wish to highlight here two decisions that refused to apply the first-to-file rule to bar a second-filed action asserting claims under the APA, specifically, on the basis that a claim that an agency rule violates the APA is distinct from a claim by or through the government for violation of that rule.

In *Cedars-Sinai Medical Center v. Shalala,* 125 F.3d 765 (9th Cir. 1997), a group of hospital plaintiffs challenged a 1986 Health Care Financing Policy Administration ("HSFA") policy on the basis that it was not issued in accordance with the rulemaking requirements of the APA.  *Id.* at 767.  A qui-tam relator, who was a plaintiff in an earlier filed case under the False Claims Act ("FCA") against the hospitals for submitting claims that were false because they violated the 1986 HSFA Medicare reimbursement policy, sought dismissal of the APA case under the first-to-file rule because the validity of the 1986 policy should be litigated in the FCA quit tam action.  *Id.* The Ninth Circuit disagreed:

> The district court correctly decided that the issues in this case and the Seattle qui tam case are different. The issue in this declaratory action is whether the HCFA's 1986 rule was validly promulgated. The issue in the Seattle qui tam case is whether any of the Hospitals knowingly submitted false claims for payment. Because these issues are distinct, the requirement of identity of the issues is not met, and the first-to-file rule is inapplicable.

*Id.* at 769.

7

Similarly, in *UnitedHealthCare Ins. Co. v. Price*, 255 F. Supp. 3d 208 (D.D.C. 2017), the government asked the court to stay the second filed action asserting claims under the APA on the basis that it was duplicative of earlier filed cases based on the FCA. In denying the government's request, the court observed that, even if the "lawsuit may touch upon similar questions of statutory interpretation," the question of whether a government contractor engaged in fraud is different from whether an agency appropriately promulgated a rule. *Id.* at 211. The court stated:

> This APA case is limited to whether [the agency] acted beyond its authority when promulgating its 2014 Overpayment Rule. It does not concern the actions of United in any way, and any analysis by the Court would be limited to the administrative record behind the 2014 Overpayment Rule and the statute. Any factual record developed in the FCA Cases would [focus on United's actions and] have very limited relevance, if any, to this APA review of the 2014 Overpayment Rule.

*Id.* at 211. "Because United's alleged behavior in the FCA Cases is distinct from [the agency's] actions in promulgating the 2014 Overpayment Rule, the fact that the same parties are in all three actions is only a distraction." *Id.* "The equitable considerations are not so strong that all matters potentially implicating similar legal issues, with otherwise separate facts and claims, should be heard sequentially throughout the federal court system." *Id.* "[A] difference of opinion among district court judges is not so unusual as to foreclose timely consideration of this matter." *Id.*

Likewise, here, there is *no* similarity between the actual claims or evidence that will be adduced to prove those claims. Unquestionably, the SEC action claims that Alpine violated the SAR provisions of the BSA, while the APA action asserts that the SEC failed to comply with the requirements of that and related statutes. These two actions are analytically similar to *Cedars-Sinai* and *United Health Care,* and are further buttressed by the additional factor that neither Alpine nor SCA could have brought their APA claim in the enforcement case. Thus, the first-to-file rule does not apply and should not serve as the basis for a stay of proceedings in this action.

8

## II. This Court Should Deny the Stay Because the New York Court Lacks the Authority to Issue an Injunction Against Non-Party SCA.

The SEC's request for a stay should be denied for an additional reason: the New York Court lacks the authority to issue an overbroad injunction that prevents SCA, which is not a party to the New York Action, from pursuing its statutory right to judicial review of the SEC's actions under the APA. Because the SEC's request for a stay relies entirely upon its motion in New York for an unlawfully and unconstitutionally overbroad injunction against a nonparty, the SEC's motion should be denied as to SCA, regardless of what happens with respect to Alpine.

"'It is well settled [that] an injunction must be narrowly tailored to remedy the harm shown.'" *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir. 2011). "'It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Taylor v. Sturgell,* 553 U.S. 880, 884 (2008) (citation omitted). This principle is based on the "'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* at 892–93 (citation omitted).

Importantly, this principle also "limits the extent to which a judgment is given preclusive effect in a subsequent suit, and (more pertinent here) the extent to which an injunction may be enforced against nonparties." *Nat'l Spiritual Assembly of Baha'is v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.,* 628 F.3d 837, 849 (7th Cir. 2010) (citing *Taylor,* 553 U.S. at 891–95 *and Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110–11 (1969)); *accord Chase Nat'l Bank v. City of Norwalk, Ohio,* 291 U.S. 431, 437 (1934) (subjecting nonparties to an injunction "violates established principles of equity jurisdiction and procedure"). "'[A] district court cannot enter a judgment purporting to bind nonparties over whom it does not have

9

jurisdiction, seek to join those nonparties to the underlying litigation, and then issue an injunction against those parties based on a need to protect its earlier judgment.'" *Swepi, LP v. Mora Cty., N.M.*, 81 F. Supp. 3d 1075, 1143 (D.N.M. 2015) (citation omitted); *Tolbert v. Koenigsmann*, 2016 WL 3349317, at *3 (N.D.N.Y. June 15, 2016) ("The Court has no power to enforce an injunction against individuals who are not parties to the lawsuit.").

The SEC has made no effort here or in New York to support its request to preclude SCA bringing its APA claims against the SEC in this action. It has not attempted to establish that SCA is even subject to personal jurisdiction in New York, which alone precludes the injunction.[5] Thus, the SEC's request that the New York Court enjoin SCA from pursuing its claims in this action should be denied by the New York Court.

That being the case, this Court should deny the Motion to Stay. Not only are these matters not duplicative – involving both separate claims and separate parties – but it would be neither just nor more efficient to stay this case where SCA cannot be enjoined by the New York Court, and the SEC has offered no other basis for a stay. Indeed, the injustice of the SEC's request is magnified with SCA which, as a nonparty, may not even be able to appeal from the New York decision.[6] The Motion should be denied as against SCA for this additional reason.

## CONCLUSION

For the foregoing reasons, the SEC's Motion to Stay should be denied.

---

[5] *See Doctor's Assocs., Inc. v. Reinert & Duree*, *P.C.,* 191 F.3d 297, 302-03 (2d Cir. 1999) (vacating district court's injunction barring nonparties from pursuing legal claims pending resolution of other litigation because such an injunction exceeded the district court's authority where nonparties were not subject to the court's personal jurisdiction); *In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").
[6] *See Marino v. Ortiz,* 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

10

Dated this 10th day of July, 2018

                                        **Clyde Snow & Sessions**

                                        */s/ Brent R. Baker*
                                        Brent R. Baker
                                        Aaron D. Lebenta
                                        Jonathan D. Bletzacker

                                        Maranda E. Fritz (*Pro Hac Vice Pending*)
                                        **THOMPSON HINE**

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of July, 2018, I caused a copy of **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS** to be filed using the CM/ECF system, which caused electronic service to be sent to the following:

Matthew S. Ferguson
U.S. Securities and Exchange Commission
100 F Street NE
Mail Stop 9612 SP1
Washington, DC 20549

Amy J. Oliver
Daniel J. Wadley
U.S. Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101

*/s/ Jessica Ritchie*
Jessica Ritchie
Legal Assistant