# **<u>EXHIBIT A</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>　　　　Defendant. | Civil No. 1:17-CV-04179-DLC<br><br>Honorable Judge Denise L. Cote<br>Magistrate Judge Ronald L. Ellis<br><br>**ECF CASE** |

**ALPINE SECURITIES CORPORATION'S MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO ENJOIN**



335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680



One Utah Center
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
(801) 322-2516

*Attorneys for Alpine Securities Corporation*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

THE COURT SHOULD NOT ENJOIN ALPINE, AND CANNOT ENJOIN
SCOTTSDALE, FROM ASSERTING A CLAIM FOR VIOLATION OF THE APA ................. 6

    A.  The First To File Rule is Inapposite ....................................................................... 6

    B.  Even if the First-Filed Rule Were Applicable, The Circumstances Here Do
        Not Support Interference with the Utah Case ....................................................... 13

    C.  Even if the First Filed Rule Were Applicable, The Proper Relief is Transfer
        of the Utah Case, Not an Injunction.................................................................... 16

    D.  Plaintiff's Efforts to Obtain An Injunction Against Nonparty Scottsdale is
        Unconstitutionally Overbroad and Impermissible. .............................................. 18

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Airship Industries v. Goodyear Tire & Rubber Co.*,
643 F.Supp. 754 (S.D.N.Y. 1986) ........................................................................9

*Allman v. Sony BMG Music Entertainment*,
2010 U.S. Dist. LEXIS 120250 (S.D.N.Y. Nov. 9, 2010) ......................................14

*An Giang & Food Import Export Co. v. United States*,
350 F.Supp.2d 1162 (Ct. Intl Trade 2004)..........................................................16

*BBC Intl v. Lumino Designs Inc.*,
441 F.Supp.2d 438 (E.D.N.Y. 2006) .....................................................................16

*Bergh v. Washington*,
535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50
L.Ed.2d 288 (1976) ...............................................................................................16

*Castillo v. Taco Bell*,
960 F.Supp. 2d 401 (E.D.N.Y. 2013) .....................................................................7

*Catalano v. BMW of North America*,
167 F.Supp. 3d 540, 545 (S.D.N.Y. 2016)........................................................9, 11

*Cedars-Sinai Medical Center v. Shalala*,
125 F.3d 765 (9th Cir. 1997) ..........................................................................10, 11

*Chase Nat'l Bank v. City of Norwalk, Ohio*,
291 U.S. 431 (1934)...............................................................................................18

*Commodity Futures Trading Commission v. Chilcott Portfolio Management*,
713 F.2d 1477 (10th Cir. 1983) .............................................................................16

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
893 F.2d 26 (2d Cir. 1990)......................................................................................11

*Cord v. Prudential Bache*,
1991 U.S.Dist. LEXIS 11201 (S.D.N.Y. Aug. 14, 1991) .......................................15

*Curtis v. Citibank N.A.*,
226 F.3d 133 (2d. Cir. 2000).................................................................................7, 8

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*,
191 F.3d 297 (2d Cir. 1999)...............................................................................17, 18

*Employers Insurance v. Fox Entertainment Group*,
   522 F.3d 271 (2d Cir. 2008)..................................................................7, 12

*First City National Bank & Trust Co. v. Simmons*,
   878 F.2d 76 (2d Cir. 1989)..........................................................................7

*Gluckin & Co. v. Intl Playtex Corp.*,
   407 F.2d 177 (2d Cir. 1969).................................................................12, 13

*Estate of Heiser v. Deutsche Bank Trust Co.*
   2012 U.S.Dist. LEXIS 96817 (July 10, 2012 S.D.N.Y.) ........................16

*Kahn v. GMC*,
   889 F.2d 1078 (Fed. Cir. 1989)................................................................14

*Klein v. Adams & Peck*,
   436 F.2d 337, 339 (2d Cir. 1971)..............................................................15

*LaSala v. Needham & Co. Inc.*,
   399 F.Supp.2d 421, 427 (S.D.N.Y. 2005) ...............................................16

*Lloyd v. J.P. Morgan Chase & Co.*,
   2012 U.S.Dist. LEXIS 114619 (S.D.N.Y. 2012)......................7, 8, 11, 16

*Nat'l Spiritual Assembly of Baha'is of U.S. v. Nat'l Spiritual Assembly of Baha'is
   of U.S., Inc.*,
   628 F.3d 837 (7th Cir. 2010) ....................................................................17

*Quinn v. Walgreen Co.*
   958 F.Supp.2d 533 (S.D.N.Y. 2013)......................................8, 9, 11, 12

*In re Rationis Enter., Inc. of Panama*,
   261 F.3d 264 (2d Cir. 2001)......................................................................18

*SEC v. Caledonian Bank Ltd.*,
   317 F.R.D. 358 (S.D.N.Y. 2016) ................................................................6

*Swepi, LP v. Mora Cty., N.M.*,
   81 F. Supp. 3d 1075, 1143 (D.N.M. 2015) ..............................................18

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).................................................................................17

*Tolbert v. Koenigsmann*,
   No. 9:13-cv-1577 (LEK/DEP), 2016 U.S. Dist. LEXIS 77738
   (N.D.N.Y. June 15, 2016) ........................................................................19

*UnitedHealthCare Ins. Co. v. Price*,
   255 F. Supp. 3d 208 (D.D.C. 2017) .......................................................................................10

*Verilux Inc. v. Ottlite Techs*,
   2009 U.S.Dist.LEXIS 82124 (D.Conn. Aug. 20, 2009) .........................................................16

*Wilkie v. Gentiva Health Services*,
   2010 U.S.Dist. LEXIS 97212 (E.D. Cal. Sept. 16, 2010).........................................................9

**Federal Statutes**

15 U.S.C. § 78u(g) ...............................................................................................................3, 6, 12

Administrative Procedure Act............................................................................................. *passim*

Bank Secrecy Act...........................................................................................................1, 4, 5, 11

**Rules**

Rule 17a-8 ...............................................................................................................................1, 3, 4, 5

# INTRODUCTION

The Plaintiff United States Securities and Exchange Commission ("Plaintiff" or the "SEC"), by this motion, seeks to have this Court insulate it from a claim that is statutorily available to any party aggrieved by agency action, *i.e.*, the assertion that the Plaintiff's current interpretation of Rule 17a-8 constitutes a plain and incontrovertible violation of the Administrative Procedure Act ("APA"). The SEC claims that it is entitled to that protection from this Court by virtue of the fact that it filed this case alleging that Alpine violated the Suspicious Activity Reporting ("SAR") regulations of the Bank Secrecy Act ("BSA").

That the SEC has filed this action in no way immunizes it against facially valid claims under the APA asserting that the SEC is acting without proper authority -- whether those claims are filed by Alpine Securities Corporation ("Alpine"), Scottsdale Capital Advisors ("Scottsdale"), or any other party aggrieved by that action. The action asserting violations of the APA is not a "competing" or duplicative proceeding, such as would be subject to the "first-filed" rule. It presents an issue concerning the SEC's compliance with critical and specific requirements imposed by the APA and related statutes – obligations that should be viewed seriously -- and the relief that it seeks is entirely different than any relief that would be issued in this case. It seeks to vindicate different rights, policies and interests. It is a claim that *cannot* be brought in this case because any counterclaim was prohibited. It is a claim that will not in any way be resolved by this proceeding because entry of a judgment against Alpine would not in any way deprive it – or any other affected firm – of the ability to pursue the separate claim under the APA. Thus, the first-to-file rule has no application here.

While the Plaintiff purports to be relying on the first-to-file rule, it certainly understands that the pending action against Alpine does not bar every affected firm – Alpine among them – from pressing a claim under the APA, nor can or does the Plaintiff contend that this case would

resolve the factual and legal issues at the core of an APA litigation.  The Plaintiff is actually

seeking application of a first-filed rule *not* based on identity of claims but based solely on the

fact that there is a single area of overlap, *i.e.*, Alpine has raised the issue of APA compliance

defensively in this case.  The Plaintiff seems to suggest that there could possibly be some

preclusive effect from this action and so, according to the Plaintiff, Alpine (and apparently

Scottsdale also) should be the only firms in the country to be prohibited from asserting the

affirmative claim under the APA.  But this amalgam of arguments of some kind of issue

preclusion combined with a prohibition targeted only against Alpine does not support the

injunctive relief that Plaintiff seeks. If the Plaintiff actually thinks that there is any ruling in this

Court that could have preclusive effect in an APA action, it can and should argue that in the Utah

case.  In fact, however, the Utah action was pursued as soon as it became clear that this

proceeding would not be an appropriate forum for the actual consideration of that critical APA

issue, and to this point there appears to be no finding from this Court regarding the application of

the APA that could have any preclusive effect.

Even if the Utah APA action were viewed as a duplicative and "competing" claim, and

therefore subject to the first-to-file analysis, no injunction should issue to bar the Utah action; in

fact, the relevant authority actually supports the argument that this action should be stayed

pending resolution of the broader threshold issues raised in the Utah case.  Those authorities

establish that the balance of convenience and any special circumstances, including whether the

situs of the first suit reflects forum shopping, must be considered by the Court in its decision on

Plaintiff's application.  Consideration of those factors, not even addressed by the Plaintiff,

confirm that the Utah action should proceed.  The filing of this case in New York was an

unabashed instance of forum shopping by the Denver office of the SEC, which brazenly

acknowledged that it decided to come to New York to sue a firm located in Salt Lake City, Utah.

Further, no result in the New York case will or could preclude that action; there is no hardship to the Plaintiff from having to answer that claim; and a delay in adjudication of the issue raised in Utah creates a likelihood that Alpine and other firms could be harmed by the SEC's unauthorized pursuit of its claims.  These circumstances and others support the continuation of the Utah APA litigation and even favor that action having priority.

Finally, even if the Court decided to issue an injunction against Alpine, the Plaintiff has presented no factual or legal basis for an injunction against a non-party to this case, Scottsdale. To go that far, and issue the requested injunction against a non-party, would be a blunt and baseless infringement of that party's right to pursue the claim under the APA.

## BACKGROUND

The Plaintiff errs in its assertion that Alpine and Scottsdale "have not claimed that Alpine was unable to raise these [APA] arguments in the Court."  Pl.'s Br. 4.  To the contrary,  and as the Plaintiff well knows, Alpine is statutorily prohibited from asserting the claim of a violation of the APA and the Plaintiff has gone the further step of seeking dismissal of any claim by Alpine addressing the actions of the SEC.  Further, the Plaintiff fails to note that the Court has repeatedly circumscribed the issues that would be addressed in this proceeding.  First, the Court granted in its entirety the Plaintiff's motion to strike affirmative defenses based on the SEC's express insistence *inter alia* that Alpine is precluded from asserting claims for affirmative relief in an SEC enforcement action by 15 U.S.C. § 78u(g).  (*See* Order, dated Jan. 12, 2018 [ECF No. 80]).  The Court also denied Claimant's request to conduct a 30(b)(6) examination of Plaintiff and denied, without briefing or opinion, Alpine's request for a discovery conference regarding the SEC's refusal to produce documents including but not limited to the underlying agreement between FinCEN and the SEC that is believed to address the issue of the SEC's authority and the

proper interpretation of Rule 17a-8.  (*See* Order, dated Apr. 11, 2018 [ECF No. 106] and Endorsed Letter, dated June 18, 2018 [ECF No. 130]).

Furthermore, while the SEC claims this Court "held that … the Commission was not required to engage in notice and comment rulemaking" in relation to its interpretation of Rule 17a-8 (Pl.'s Br. 2), that assertion appears unfounded given the fact that, in a decision that would have represented a dramatic departure from settled case law concerning any agency's obligations under the APA, the Court declined to cite to the relevant provisions of the APA, discuss any of the abundant decisions cited by Alpine that address the issue of compliance with the APA, or hold that the SEC complied with the requirements of the APA in regards to administering or enforcing the SAR regulations of the BSA through Rule 17a-8.  In support of its assertion, the SEC cites generally to the Court's rejection of Alpine's cross-motion for summary judgment but does not even attempt to quote any relevant language from the decision regarding the APA, nor does it try to articulate any rationale or any authority for the conclusion supposedly reached by the Court that the SEC was absolved in perpetuity of the obligation to comply with the APA in relation to amendments of the BSA.  None of the numerous substantial APA issues, which are well stated by the SEC in its description of the Utah complaint (Pl.s' Br. 3), were considered.  A fair reading of the Court's decisions suggests, instead, that the Court declined to address the issue, and that its only pertinent reference in the decision is simply an acknowledgement of the SEC's contention that the phrase "revisions" in the SEC's adopting release caused the rule to subsume all subsequent provisions of the BSA.

The SEC also references the Court's denial of the motion for reconsideration as supposed evidence that the substantial issues associated with the APA were actually adjudicated by the District Court.  There, the District Court, again in a single reference, alluded generally to its "application of settled administrative law principles."  (*See*  Order, dated June 18, 2018 [ECF

No. 129]) That cannot be a reference to authorities or principles relating to the APA since none were cited or applied by the District Court in either decision.  It is more likely a reference to the Court's invocation of *Chevron* deference.

In the wake of those proceedings, Alpine filed a Petition for a Writ of Mandamus which argues, primarily, that the SEC lacks authority to pursue claims based on purported violations of the provisions of the BSA because Congress delegated to the Department of Treasury the authority to administer, interpret and enforce the BSA.  The SEC's failure to comply with the APA is also raised in the Petition but, given the posture of the proceeding and the District Court's decision not to address or apply the actual provisions of the APA or relevant authority, it is uncertain and even unlikely that the issue will be taken up by the Circuit.

Alpine and Scottsdale Capital also filed a complaint in the District of Utah, where Alpine is located, which asserts a series of causes of action against the SEC arising from its failure to comply with the specific requisites of the APA and related statutes.  The Complaint asserts that the SEC failed to abide by the notice and comment rulemaking pursuant to 5 U.S.C. § 706; that its actions were arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A); that the SEC failed to comply with both the Regulatory Flexibility Act and the APA, in its interpretation and purported enforcement of Rule 17a-8; and that the SEC failed to conduct the required analyses concerning the costs, benefits and burdens of the supposed absorption of the new statutory scheme established by the SAR provisions of the BSA.

That Complaint squarely and properly presents the substantial issues associated with the SEC's current assertions regarding Rule 17a-8.  Resolution of those issues will require consideration not only of the provisions of the APA but also examination of the extent of the Congressional authority conferred by Section 17 of the Securities Exchange Act, 15 U.S.C. § 78q(a), and the history and purpose of Rule 17a-8, 17 C.F.R. §  240.17a-8.  As confirmed in

the Declaration of Beverly E. Loew, Alpine's expert witness, a comprehensive review of each of those provisions and the legislative and regulatory history surrounding them confirms that Rule 17a-8 could not and does not have the remarkably elastic and expansive impact claimed by the SEC.  *See* Declaration of Beverly Loew ¶¶ 53-69.

## ARGUMENT

### THE COURT SHOULD NOT ENJOIN ALPINE, AND CANNOT ENJOIN SCOTTSDALE, FROM ASSERTING A CLAIM FOR VIOLATION OF THE APA

To literally enjoin a litigant from asserting a claim, ***where the litigant has been precluded from asserting that claim in the ongoing proceeding***, is unprecedented and impermissible. No case cited by the Plaintiff supports that result and, while the SEC would undoubtedly welcome a ruling that would insulate it from an APA claim, it is not entitled to immunity.  Nor does consideration of the authorities relating to the concept of first-to-file support their request.  The two filed actions at issue are plainly not "essentially the same."  (Pl.'s Br. 5).  This case is a claim that Alpine engaged in violations of the provisions of the BSA and seeks a judgment as against Alpine based solely on its conduct.  The Utah action, on the other hand, focuses solely on the SEC's conduct and squarely presents the fact that the SEC, in its interpretation and implementation of Rule 17a-8, never even purported to comply with the APA, and it seeks different and broader relief to which Alpine, Scottsdale, and any affected firm, would be entitled.

### A.  The First To File Rule is Inapposite

The SEC presents a solitary claim: that the Utah action is a second-filed proceeding that should be enjoined.  The SEC relies entirely on a premise that is misleading and contrary to the record in this case *, i.e.*, that the claims in the Utah case "are functionally identical" to *arguments* raised by Alpine in this action.  (*Id.*)  In fact, Alpine did not and could not assert *a claim* under

the APA in this enforcement action because it is precluded from doing so by 15 U.S.C. § 78u(g).
*See generally SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358, 367-68 (S.D.N.Y. 2016) (observing
that Section 21(g) of the Exchange Act, 15 U.S.C. § 78u(g), precludes any "non-SEC party"
from bringing a claim, including counterclaims, in an SEC enforcement action and that claims
"against the SEC relating to this enforcement action must be brought, if at all, in another case.").

To the extent that Alpine argued that this Court should consider the violation of the APA
in this action, the Court declined to address the statutory provisions or the cited authorities and
failed to reach any conclusion that the provisions of the APA were actually satisfied. Even if the
Court had been willing to discuss and apply the requirements of the APA, an injunction still
would *not be* warranted given the obvious dissimilarities between the claims, the parties and
relief requested.[1]

The specific contours of the first to file concept are strikingly undefined in the Plaintiff's
motion. The Plaintiff's discussion would suggest that a federal court should enjoin any other
proceeding that "embraces essentially the same transactions" or is even "related." (Pl.'s Br. 6-7).
The SEC combines that gelatinous articulation of first-to-file with generic appeals to this Court
to protect courts that are "heavily burdened with litigation" and prevent litigation that would be
vexatious to the SEC. The SEC goes a substantial and impermissible step farther, presenting the
appropriate relief as an injunction as opposed to transfer or consolidation.

The SEC's expansive characterization of first-to-file is not rational nor is it consistent
with the decisions of the Second Circuit. The first-to-file concept is intended to address the
circumstance of multiple litigants, engaged in a single dispute, filing separate actions against one

---

[1] Even the argument that any aspect of this case could have preclusive effect is in substantial doubt, given Alpine's inability to raise an affirmative APA claim in this case. *See* Restatement (Second) of Judgments § 26(c) (1982) (stating that the principles of merger and bar do not extinguish a claim or prevent it as serving as a basis "for a second action" when, *inter alia,* the "plaintiff was unable to . . . seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.").

another, often in the hope of controlling the location of the proceedings or gaining some other tactical advantage. To prevent that conduct, the first-to-file rule deals with instances of "*competing*" or "*duplicative*" litigation – where each of two actions will adjudicate the dispute raised in both. Thus, the rule "provides that 'two competing but related disputes brought in two different fora should be consolidated in the court in which the first action was brought." *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (LTS), 2012 U.S. Dist. LEXIS 114619, at *3 (S.D.N.Y. Aug. 14, 2012) ("Two cases compete 'when identical or substantially similar parties and claims are present in both courts.'") (citation omitted). *See also Employers Ins. v. Fox Entm't Grp.*, 522 F.3d 271, 274 (2d Cir. 2008) (first filed rule involves instances "where 'essentially the same lawsuit involving the same parties and the same issues'" is pending in two district courts) (citation omitted); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (where "'there are two competing lawsuits,'" the first should have priority) (citation omitted); *Castillo v. Taco Bell*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) (court must consider whether the lawsuits "assert the same rights, and seek relief based on the same facts;" the "claims and rights raised in the two actions must not differ substantially").

The Second Circuit in *Curtis v. Citibank N.A.*, 226 F.3d 133 (2d. Cir. 2000), stated plainly that courts should be cautious in application of the first-filed rule and consider carefully whether the claims are "entirely duplicative." Reversing the district court's dismissal of a second filed action, the Second Circuit stated:

> A court must be careful … not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same. Here, they are not entirely duplicative. Thus, dismissal in whole was inappropriate and we must remand the case.

*Id.* at 136. *See also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) ("When applying the first-filed rule to assertedly duplicative actions, the court must carefully consider whether the suits are, in fact, duplicative…").

In the *Lloyd* case, for example, both cases asserted the same claim: that J.P. Morgan had misclassified employees as "exempt" and failed to pay them overtime. The defendant did not even seek to enjoin the second case but instead asked that the New York case be transferred to the Central District of California where the earlier filed action was pending so that both could be considered. The motion to transfer was denied.

> Here, although there is some basic similarity of claims between the two actions and one defendant is identical, transfer under the first-filed rule is unwarranted because the state-law based claims in the [California] action and the class definition in the [other] action do not subsume, and their resolution would not be conclusive of those asserted in the instant action.

*Lloyd*, 2012 U.S. Dist. LEXIS 114619, at *3-4.

Similarly, where there were multiple litigations against Walgreens claiming improprieties associated with its sales of a glucosamine product, the court denied Walgreen's motion for a stay or dismissal of the suit filed in New York a year after the initial Illinois action.

> Here, because this case presents neither identical issues nor identical parties as the [Illinois] action, the Court finds the first-filed rule does not apply. … For the first-filed rule to apply, there must be 'essentially the same lawsuit involving the same parties and the same issues filed in two different forums.

*Quinn*, 958 F. Supp. 2d at 539-540 (citation omitted). The court also rejected the defendant's argument that the Court should, at the least, stay the New York action pending disposition of the motion to dismiss pending in Illinois, stating that the issues presented in the New York case would have to be litigated regardless and on their merits.

> The decision of a district court in another district in a case involving different plaintiffs and different law certainly is not binding on this Court. Therefore, the Court finds 'considerations of judicial administration and conservation of

resources' do not counsel in favor of staying this case pending the disposition of the motion to dismiss in [the first-filed case].

*Id.* at 540 (citation omitted).

The same tactic was employed unsuccessfully by BMW which was confronted with multiple filings claiming alleged defects in BMW X5 and X3 automobiles. BMW sought to dismiss, stay or transfer the New York case on the ground that a "substantially similar suit" was filed earlier in time in California. The court denied the motion, "conclud[ing] that the first-filed rule does not apply." *Catalano v. BMW of N. Am.*, 167 F. Supp. 3d 540, 545 (S.D.N.Y. 2016). The court considered the fact that both cases involved the same allegations of manufacturing and design defects, and BMW's alleged knowledge and concealment of those defects, and so both cases would involve adjudication of those underlying issues. Nonetheless, the court noted the distinctions between the actions, in terms of both participants and the claims, and "conclude[d] that the overlap of factual and legal issues is insufficient to warrant application of the first filed rule." *Id.* at 552; s*ee also Airship Indus. (UK), Ltd. v. Goodyear Tire & Rubber Co.*, 643 F. Supp. 754 (S.D.N.Y. 1986) (court refused to enjoin pending suits against the defendant, all alleging violation of state anti-dilution provisions, noting that the pending case includes claims "that will not necessarily be decided or entertained in the two pending suits" and that Goodyear had threatened to commence other similar lawsuits and so litigation of the second action would further judicial economy ); *Wilkie v. Gentiva Health Servs.*, No. 10-1451 FCD/GGH, 2010 U.S. Dist. LEXIS 97212, at *12-14 (E.D. Cal. Sept. 16, 2010) (where two actions were filed claiming that the defendant violated the FLSA, court declined to transfer the second filed case because certain claims were dissimilar).

At least two courts in other jurisdictions have refused to apply the first-to-file rule to bar a second filed action asserting claims under the APA, given the distinct nature of the APA claims

from the underlying dispute of whether the party violated the rule at issue in the APA case.  In

*Cedars-Sinai Med. Ctr. v. Shalala,* 125 F.3d 765 (9th Cir. 1997), a group of hospital plaintiffs

challenged a 1986 Health Care Financing Policy Administration ("HSFA") policy on the basis

that it was not issued in accordance with the rulemaking requirements of the APA.  *Id.* at 767.  A

qui-tam relator, who was a plaintiff in an earlier filed case under the False Claims Act ("FCA")

against the hospitals for submitting claims that were false because they violated the 1986 HSFA

Medicare reimbursement policy, sought dismissal of the APA case under the first-to-file rule

because the validity of the 1986 policy should be litigated in the FCA qui tam action.  *Id.* The

Ninth Circuit disagreed:

> The district court correctly decided that the issues in this case and the Seattle qui
> tam case are different. The issue in this declaratory action is whether the HCFA's
> 1986 rule was validly promulgated. The issue in the Seattle qui tam case is
> whether any of the Hospitals knowingly submitted false claims for payment.
> Because these issues are distinct, the requirement of identity of the issues is not
> met, and the first-to-file rule is inapplicable.

*Id.* at 769.

Similarly, in *UnitedHealthCare Ins. Co. v. Price*, 255 F. Supp. 3d 208 (D.D.C. 2017), the

government asked the court to stay the second filed action asserting claims under the APA on the

basis that it was duplicative of earlier filed cases based on the False Claims Act.  In denying the

government's request, the court observed that even if the "lawsuit[] may touch upon similar

questions of statutory interpretation," the question of whether a government contractor

knowingly engaged in fraud is different from whether a government agency appropriately

promulgated a rule.  *Id.* at 211.  The court reasoned:

> This APA case is limited to whether [the Centers for Medicare and Medicaid
> Services] acted beyond its authority when promulgating its 2014 Overpayment
> Rule. It does not concern the actions of United in any way, and any analysis by
> the Court would be limited to the administrative record behind the 2014
> Overpayment Rule and the statute. Any factual record developed in the FCA

> Cases would [focus on United's actions and] have very limited relevance, if any, to this APA review of the 2014 Overpayment Rule.

*Id.* Thus, "[b]ecause United's alleged behavior in the FCA Cases is distinct from [the Department of Health and Human Services]'s actions in promulgating the 2014 Overpayment Rule, the fact that the same parties are in all three actions is only a distraction." *Id.* "The equitable considerations are not so strong that all matters potentially implicating similar legal issues, with otherwise separate facts and claims, should be heard sequentially throughout the federal court system." *Id.* And "a difference of opinion among district court judges is not so unusual as to foreclose timely consideration of this matter." *Id.*

Here, there is *no* similarity between the actual claims or evidence that will be adduced to prove those claims. Unquestionably, the SEC action claims that Alpine violated the SAR provisions of the BSA, while the APA action asserts that the SEC failed to comply with the requirements of that and related statutes. These two actions are analytically similar to *Cedars-Sinai* and *UnitedHealthCare,* further buttressed by the additional factor here that neither Alpine nor Scottsdale could have brought their APA claim in this enforcement case. These two cases at bar lack even the similarity of claims that existed in *Lloyd, Quinn,* and *Catalano,* all cases in which the motions to stay or transfer were denied. In fact, here there is only an overlap of an "argument," not a claim. Under these circumstances, the first-to-file rule does not apply.

That the first-filed rule is inapplicable here is underscored by the fact that, where the same claims are not asserted in both actions, the first filed analysis is applied only if "the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit pending before it. Where allegations in a second case are not compulsory counterclaims to the claims asserted in the first filed action, the second action can proceed. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 28–29 (2d Cir. 1990). Of course, here

neither Alpine's nor Scottsdale's affirmative APA claim could be considered "compulsory" where neither was permitted to assert it in this case due to 15 U.S.C. § 78u(g), and where Scottsdale is not even a party.

### B.  Even if the First-Filed Rule Were Applicable, The Circumstances Here Do Not Support Interference with the Utah Case

Even where two federal actions involve "essentially the same lawsuit," such that adjudication of one will resolve the other, or where the second action should have been pursued as a compulsory counterclaim, the first-filed rule should not be "applied in a 'rigid' or 'mechanical' way."  *Quinn*, 958 F.Supp. 2d 539 (confirming that the issues arising from multiple federal filings '"do not lend themselves to a rigid test'") (citation omitted).  In the words of the Second Circuit, the rule "does not constitute an invariable mandate." *Employers Ins.*, 522 F.3d at 275.

> The inquiry still requires selection of the more appropriate forum, since the first file rule is only a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action.

*Id.*  (citation omitted).Reversing the trial court based on it its failure to consider circumstances other than the similarity of the cases and the order of filing, the Second Circuit confirmed that a trial court must also consider whether the "balance of convenience," or "special circumstances," favor the second-filed action.  *Id.*  For example, the Second Circuit continued, a special circumstance exists where '"forum shopping *alone* motivated the choice of the situs for the first suit.'"  *Id.* at 276 (citation omitted; emphasis in original).  The second forum may be more appropriate where either the plaintiff engaged in "manipulative or deceptive behavior" *or* "the ties between the litigation and the first forum [are] so tenuous or *de minimis* that a full balance of convenience analysis would not be necessary to determine that the second forum is more appropriate than the first."  *Id.*

That the second filed case, where it addresses a threshold issue and was filed in the more convenient forum, should take priority is illustrated by the decision in *Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969).  That dispute concerned the sale by the plaintiff of products that allegedly infringed a Playtex patent.  Playtex was the first-to-file, commencing a patent infringement action in the Northern District of Georgia, "ostensibly" because the product was being sold at a store in Georgia.  *Id.* at 178.  The second action was filed by Gluckin in New York and sought a declaration of patent invalidity.  The court restrained Playtex from further prosecuting its first-filed Georgia action, finding that "special circumstances" existed, and the Second Circuit affirmed.

In reaching that conclusion, the Second Circuit reiterated the underlying rule that the first-filed case "should have priority 'absent the showing of balance of convenience in favor of the second action' or unless there are special circumstances which justify giving priority to the second."  *Id.* (citations omitted).  An example of a special circumstances, the Second Circuit noted, "is where forum shopping alone motivated the choice of the situs for the first suit."  *Id.* The court looked to a range of factors relating to the "balance of convenience" including the absence of any knowledgeable witnesses in Georgia, the fact that the New York plaintiff is a New York corporation with its main offices in New York City and is not licensed to do business in Georgia, that Playtex also has its offices in New York City, and that all of the relevant acts and transactions occurred in New York.  *Id.* at 179-80.  In that case, as here, the argument was made by Playtex that there were actually some witnesses in Georgia and that it had some legitimate reasons for filing suit there; the court found its claimed reasons for filing in Georgia "not very persuasive."  *Id.* at 180.  Given those circumstances, the Second Circuit confirmed that the enjoining of the first filed suit "does not appear to be at all unreasonable."  *Id.*

This case arguably presents both special circumstances and a balance of convenience that would favor the Utah action. There was plainly forum shopping here when the Denver office of the SEC decided to force a Utah firm to defend itself in the Southern District of New York. Likewise, the ties to this jurisdiction are *de minimis*. The SEC argued, for example, that it might have to call witnesses from a New York City office of the Department of Homeland Security; it appears, however, that those witnesses will not be participating in this proceeding and have, in fact, refused even to respond to a subpoena relating to the interviews that they allegedly conducted. As Alpine confirmed at the outset of this case, all documents and all witnesses are actually in Utah, and so the parties have spent weeks at a time in Utah conducting depositions while none have or will occur in this jurisdiction. Ties between this litigation and this jurisdiction could not be less substantial or impose any greater burden on a regional firm like Alpine.

Other traditional factors are also relevant to whether the Court should enjoin a litigant from being able to advance a valid legal claim. The movant must, for example, "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Kahn v. GMC*, 889 F.2d 1078, 1080, 1082-83 (Fed. Cir. 1989) (reversing trial court's stay of patent infringement suit because the cases presented "entirely different issue[s]," a "lengthy and indefinite stay … will deprive these claims of practical remedy," and the other filed action would not "be an adequate vehicle for the complete and prompt resolution" of all issues).

> In determining whether to stay a civil action, pending resolution of a concurrent civil action in federal court, the courts in this district usually consider the following factors: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'

*Allman v. Sony BMG Music Entm't*, Nos. 06 Civ. 3252 (GBD)(KNF) and 07 Civ. 2394 (GBD)(KNF), 2010 U.S. Dist. LEXIS 120250, at *10 (S.D.N.Y. Nov. 9, 2010), *reconsidered an aff'd by in pertinent part*, *The Youngbloods v. Sony Music Entm't, Inc.*, No. 07 Civ. 2394 (GBD)(KNF), 2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011). While noting that those factors are typically considered where a stay is sought of a civil case in favor of a criminal action, the court applied the basic factors to a motion to stay one civil action in favor of another. Based on its consideration of those factors, the court denied the defendant's motion for a stay, finding that "[t]his is not one of those rare circumstances in which a litigant should 'be compelled to stand aside while a litigant in another [cause] settles the rule of law that will define the rights of both." *Id.* at *24; s*ee also Cord v. Prudential Bache Secs., Inc.*, No. 91 Civ. 1477 (MBM), 1991 U.S. Dist. LEXIS 11201 (S.D.N.Y. Aug. 14, 1991) (where defendant moved for stay pending resolution of a related class action filed in Illinois, held that "'the party requesting a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'") (citation omitted).

### C. Even if the First Filed Rule Were Applicable, The Proper Relief is Transfer of the Utah Case, Not an Injunction

The Plaintiff seeks relief that is a plain contradiction of its own assertions. It claims that the first-filed rule should be applied because the claim asserted in the Utah case can be and/or has been asserted here, knowing that the APA claim could not be brought in this case, and then seeks only one form of relief, an *injunction*, that will ensure that the APA claim is *not* adjudicated. While that would obviously be a desirable result for the SEC, it is clear from relevant authorities that an injunction is not an appropriate result here; an application for a transfer of one or the other of these actions would be the only possible relief.

16

Consideration of the Plaintiff's motion should begin with the basic principle that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971).

> The underlying principle clearly is that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir.1971). Moreover, these precautions are of particular importance where, as here, restraints on other courts are contemplated:
>
>> When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases. *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976).

*Commodity Futures Trading Commission v. Chilcott Portfolio Management*, 713 F.2d 1477, 1484 (10th Cir. 1983) (reversing grant of injunction against investor's actions). *See also Estate of Heiser v. Deutsche Bank Trust Co.* No. 11 Civ. (AJN)(MHD), 2012 U.S.Dist. LEXIS 96817, at *11 (S.D.N.Y. July 10, 2012) (citing *Klein* and holding that "'[c]ourts are generally reluctant to stay proceedings because they are concerned with vindicating the plaintiff's right to proceed with its case'") (quoting *LaSala v. Needham & Co. Inc.*, 399 F.Supp.2d 421, 427 (S.D.N.Y. 2005) (discussing propriety of staying pending action)); *An Giang & Food Imp. Exp. Co. v. United States*, 350 F. Supp. 2d 1162, 1167-82 & n.3 (Ct. Int'l Trade 2004) ( "underpinning" of relevant case law "is a concern for the rights of assertedly aggrieved plaintiffs to seek redress in the courts").

As confirmed in *Verilux Inc. v. Ottlite Techs., Inc.*, No. 09-cv-000717 (JCH), 2009 U.S. Dist. LEXIS 82124, at *5 (D. Conn. Aug. 20, 2009), the first-filed rule is, in essence, "a change of venue principle," designed to facilitate – *not preclude* – a party's assertion of a "competing" or "duplicative" claim. As a result, where the claims are truly duplicative, and are asserted and will be resolved in either suit, the courts generally allow the first filed action to proceed or

consolidate the actions. *Id.* at *6. *See Lloyd*, 2012 U.S. Dist. LEXIS 114619, at *3 (held that competing disputes should be consolidated). As discussed above, special circumstances, including a balancing of convenience, may support prioritizing the second suit. *Verilux*, 2009 U.S. Dist. LEXIS 82124, at *7-8. If appropriate, and particularly where the claims are related but not duplicative, one of the suits may be transferred to the jurisdiction of the other for resolution of all claims. *Id.* at *6-20. *See also BBC Int'l v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 442 (E.D.N.Y. 2006) (held that second filed action would be transferred to first filed jurisdiction). Under no circumstances does any application of the first filed rule support even a stay of, much less an outright prohibition against, the assertion of claims that are not and cannot be presented in the first filed suit.

This Plaintiff would have had every ability to seek a transfer of the Utah action if it viewed the actions are being related even though not duplicative. Certainly defendants would oppose that, given the fact that the very existence of a suit in New York is a product of blatant forum shopping with the effect, if not the purpose, of prejudicing Alpine. Nonetheless, under these circumstances, where there is no question that these actions are at most related – not duplicative – that application to transfer would constitute the only appropriate means by which to address the Plaintiff's concerns regarding having to actually litigate the APA claim asserted in the Utah proceeding.

### D. Plaintiff's Efforts to Obtain An Injunction Against Nonparty Scottsdale is Unconstitutionally Overbroad and Impermissible.

The SEC's request that this Court enjoin Scottsdale from pursuing its claims in the APA action fails for the additional reason that Scottsdale is not a party to this action. "'It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been

made a party by service of process.'" *Taylor v. Sturgell,* 553 U.S. 880, 884 (2008) (citation omitted). This principle is based on the "'deep-rooted historic tradition that everyone should have his own day in court.'"  *Id.* at 892–93 (citation omitted). Unsurprisingly, the Second Circuit has likewise held that "'a court generally may not issue an order against a nonparty.'" *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) (citation omitted).

Importantly, this principle also "limits the extent to which a judgment is given preclusive effect in a subsequent suit, and (more pertinent here) the extent to which an injunction may be enforced against nonparties." *Nat'l Spiritual Assembly of Bahaʻis of U.S. v. Nat'l Spiritual Assembly of Bahaʻis of U.S., Inc.,* 628 F.3d 837, 849 (7th Cir. 2010); *accord Chase Nat'l Bank v. City of Norwalk, Ohio,* 291 U.S. 431, 437 (1934) (stating that subjecting nonparties to an injunction "violates established principles of equity jurisdiction and procedure"); *Tolbert v. Koenigsmann*, No. 9:13-cv-1577 (LEK/DEP), 2016 U.S. Dist. LEXIS 77738, at *8-9 (N.D.N.Y. June 15, 2016) ("The Court has no power to enforce an injunction against individuals who are not parties to the lawsuit."); *Swepi, LP v. Mora Cty., N.M.*, 81 F. Supp. 3d 1075, 1143 (D.N.M. 2015) ( "'[A] district court cannot enter a judgment purporting to bind nonparties over whom it does not have jurisdiction, seek to join those nonparties to the underlying litigation, and then issue an injunction against those parties based on a need to protect its earlier judgment.'" (citation omitted)).

The SEC has made no effort to support its request to enjoin Scottsdale from exercising its statutory right to seek judicial review of the SEC's conduct under the APA.  It has not attempted to establish that Scottsdale is even subject to personal jurisdiction in New York.  *See Doctor's Assocs.*, 191 F.3d at 302-03 (vacating district court's injunction barring nonparties from pursuing certain legal claims until litigation between the parties was involved on the grounds that such an injunction exceeded the scope of district court's authority as such nonparties were not subject to

19

the court's personal jurisdiction); *In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 270 (2d

Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over

whom it does not have personal jurisdiction.").  The SEC's Motion, as it relates to Scottsdale,

must be denied for this additional reason.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny the SEC's Motion to Enjoin The Utah

Proceedings.

Dated: New York, New York                    Respectfully submitted,
       July 9, 2018

By:  /s/ *Maranda E. Fritz*
          Maranda E. Fritz
          THOMPSON HINE LLP
          335 Madison Avenue, 12th Floor
          New York, New York 10017-4611
          Tel. (212) 344-5680
          Fax (212) 344-6101
          Maranda.Fritz@thompsonhine.com

          Brent R. Baker (BB 8285)
          Aaron D. Lebenta (*Pro Hac Vice*)
          Jonathan D. Bletzacker (*Pro Hac Vice*)
          CLYDE SNOW & SESSIONS
          One Utah Center
          201 South Main Street, Suite 1300
          Salt Lake City, Utah 84111-2216
          Telephone 801.322.2516
          Facsimile 801.521.6280
          brb@clydesnow.com
          adl@clydesnow.com
          jdb@clydesnow.com

          *Attorneys for Defendant Alpine Securities*
          *Corporation*