RACHEL M. MCKENZIE
Senior Litigation Counsel

MATTHEW S. FERGUSON
Senior Counsel

STEPHEN SILVERMAN
Attorney

U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
silvermanst@sec.gov
202-551-6150

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### Central Division

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS, an Arizona Corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br><br>Defendant. ) | Case No. 2:18-cv-00504-CW-CMR<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Cecilia M. Romero |

**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................ii

DEFENDANT'S MOTION TO DISMISS ..................................................................... 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS..................... 1

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 4

    A.   The SDNY court rejected Alpine's statutory and regulatory challenges to the Commission's authority to enforce SAR requirements under Section 17(a) and Rule 17a-8. ................................................................................................................4

    B.   The SDNY court enjoined Alpine and SCA from litigating this APA lawsuit, which sought to block the prosecution of the SDNY enforcement action. ...................................6

    C.   The SDNY court found Alpine liable for thousands of violations of Section 17(a) and Rule 17a-8, the Second Circuit affirmed, and the Supreme Court denied certiorari. .......8

    D.   The firms dropped their request for preliminary injunctive relief in this lawsuit, Alpine dismissed its claims, and SCA filed an amended complaint...............................................9

ARGUMENT ......................................................................................................... 10

   I.   SCA fails to adequately allege Article III standing. .......................................... 10

    A.   SCA fails to plausibly allege a cognizable legal injury traceable to any final Commission action. ................................................................................................11

    B.   SCA fails to adequately allege that its putative injury would be redressed by the relief that it seeks........................................................................................................15

   II.   SCA fails to identify a "final agency action" subject to APA review. .............................. 16

   III.  SCA's complaint is untimely................................................................................. 21

CONCLUSION....................................................................................................... 24

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*118 E. 60th Owners, Inc. v. Bonner Props. Inc.*,
   677 F.2d 200 (2d Cir. 1982) ............................................................. 23, 24

*Alpine Secs. Corp. v. SEC*,
   142 S. Ct. 461 (2021) ........................................................................... 3, 9

*Amalgamated Sugar Co. v. Bergland*,
   664 F.2d 818 (10th Cir. 1981) ................................................................. 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 10, 21

*Ass'n of Am. Med. Colls. v. United States*,
   34 F. Supp. 2d 1187 (C.D. Cal. 1998) ..................................................... 20

*Ass'n of Irritated Residents v. EPA*,
   494 F.3d 1027 (D.C. Cir. 2007) .............................................................. 18

*AT&T v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001) ............................................................... 18

*Banner Health v. Sebelius*,
   797 F. Supp. 2d 97 (D.D.C. 2011) .......................................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................... 10, 12

*Chem. Weapons Working Grp. v. Dep't of the Army*,
   111 F.3d 1485 (10th Cir. 1997) .............................................................. 16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................... 14, 16

*Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*,
   220 F.3d 1171 (10th Cir. 2000) ............................................................. 17, 18

*Colorado v. EPA*,
   989 F.3d 874 (10th Cir. 2021) ................................................................ 15

*Cope v. Kan. State Bd. of Educ.*,
   821 F.3d 1215 (10th Cir. 2016) .............................................................. 11

*Deadrich v. Salt Lake Cnty.*,
   2020 WL 5531259 (D. Utah Sept. 15, 2020) .......................................... 14

*Donelson v. United States*,
   730 F. App'x 597 (10th Cir. 2018) ....................................................... 18-19

*Garcia v. Vilsack,*
  563 F.3d 519 (D.C. Cir. 2009) ......................................................................... 20

*Impact Energy Res., L.L.C. v. Salazar,*
  693 F.3d 1239 (10th Cir. 2012) ....................................................................... 21

*Johnson v. Spencer,*
  950 F.3d 680 (10th Cir. 2020) ......................................................................... 21

*Karst Env't Educ. & Prot., Inc. v. EPA,*
  475 F.3d 1291 (D.C. Cir. 2007) ....................................................................... 16

*Kaspersky Lab, Inc. v. Dep't of Homeland Sec.,*
  311 F. Supp. 3d (D.D.C. 2018) ........................................................................ 15

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ........................................................................................ 10

*N.J. Hosp. Ass'n v. United States,*
  23 F. Supp. 2d 497 (D.N.J. 1998) .................................................................... 20

*Nagahi v. INS,*
  219 F.3d 1166 (10th Cir. 2000) ....................................................................... 21

*Nat'l Veterans Legal Servs. Program v. Dep't of Def.,*
  990 F.3d 834 (4th Cir. 2021) ........................................................................... 16

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ..................................................................................... 17, 18

*Nova Health Sys. v. Gandy,*
  416 F.3d 1149 (10th Cir. 2005) .................................................................. 11, 15

*Osage Producers Ass'n v. Jewell,*
  191 F. Supp. 3d 1243 (N.D. Okla. 2016) ........................................................ 19

*Producers of Renewables United for Integrity Truth & Transparency v. EPA,*
  2022 WL 538185 (10th Cir. Feb. 23, 2022) .................................................... 15

*Pyle v. Woods,*
  874 F.3d 1257 (10th Cir. 2017) ....................................................................... 14

*Quicken Loans, Inc. v. United States,*
  152 F. Supp. 3d 938 (E.D. Mich. 2015) ..................................................... 19, 20

*Rein v. Providian Fin. Corp.,*
  270 F.3d 895 (9th Cir. 2001) ........................................................................... 19

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
  599 F.3d 1165 (10th Cir. 2010) ....................................................................... 24

*Salzer v. SSM Health Care of Okla. Inc.*,
762 F.3d 1130 (10th Cir. 2014) ...................................................... 10

*Schulke v. United States*,
544 F.2d 453 (10th Cir. 1976) ........................................................ 20

*Sierra Club v. Okla. Gas & Elec. Co.*,
816 F.3d 666 (10th Cir. 2016) ........................................................ 21

*Sierra Club v. Yeutter*,
911 F.2d 1405 (10th Cir. 1990) ...................................................... 18

*Smith v. United States*,
561 F.3d 1090 (10th Cir. 2009) ...................................................... 11

*Sw. Env't Ctr. v. Sessions*,
355 F. Supp. 3d 1121 (D.N.M. 2018) ............................................. 10

*Temple Univ. v. Brown*,
2001 WL 185535 (E.D. Pa. Feb. 23, 2001) .................................... 20

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) ....................................................... 16

*SEC v. Alpine Secs. Corp. (Alpine I)*,
308 F. Supp. 3d 775 (S.D.N.Y. 2018) .................................... 5, 6, 22

*SEC v. Alpine Secs. Corp.*,
2018 WL 3198889 (S.D.N.Y. June 18, 2018) .................................. 6

*SEC v. Alpine Secs. Corp. (Alpine II)*,
2018 WL 3377152 (S.D.N.Y. July 11, 2018) ........................... *passim*

*SEC v. Alpine Secs. Corp. (Alpine III)*,
354 F. Supp. 3d 396 (S.D.N.Y. 2018) .................................... 2, 8, 12

*SEC v. Alpine Secs. Corp. (Alpine IV)*,
413 F. Supp. 3d 235 (S.D.N.Y. 2019) ................................. 2, 5, 8, 16

*SEC v. Alpine Secs. Corp.*,
768 F. App'x 93 (2d Cir. May 28, 2019) ...................................... 2, 8

*SEC v. Alpine Secs. Corp.*,
982 F.3d 68 (2d Cir. 2020) ............................................... 3, 8, 12

*Utah Native Plant Soc'y v. U.S. Forest Serv.*,
923 F.3d 860 (10th Cir. 2019) ...................................................... 17

*Walmart Inc. v. DOJ*,
21 F.4th 300 (5th Cir. 2021) ......................................................... 18

iv

*Walmart Inc. v. DOJ*,
    517 F. Supp. 3d 637 (E.D. Tex.) ........................................................ 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................... 11

*Wild Fish Conservancy v. Jewell*,
    730 F.3d 791 (9th Cir. 2013) ............................................................. 19

*Wittner v. Banner Health*,
    720 F.3d 770 (10th Cir. 2013) ........................................................... 12

## STATUTES

Securities Exchange Act of 1934, 15 U.S.C. 78a et seq.
    Section 17(a), 15 U.S.C. 78q ........................................................... 1, 4
    Section 25(a)(1), 15 U.S.C. 78y(a)(1).............................................21, 24
    Section 25(b), 15 U.S.C. 78y(b)(1) ............................................... 21, 24

5 U.S.C. 551 ......................................................................... 3, 16, 17, 18
5 U.S.C. 601 .................................................................................. 20, 21
5 U.S.C. 611 .................................................................................. 21, 24
5 U.S.C. 702 ......................................................................................... 16
5 U.S.C. 704 ......................................................................... 3, 16, 17, 18
28 U.S.C. 2201 ..................................................................................... 20
28 U.S.C. 2401 ......................................................................... 4, 10, 21
31 U.S.C. 5311 ....................................................................................... 4
31 U.S.C. 5321 ..................................................................................... 16

## REGULATIONS AND RULES

17 C.F.R. 240.17a-8 ..................................................................... 1, 4, 12
31 C.F.R. 103.19 .................................................................................. 23
31 C.F.R. 1023.320 ...................................................................... 4, 11, 17, 22
Fed. R. Civ. P. 12(b)(1)........................................................................10
Fed. R. Civ. P. 12(b)(6)...............................................................10, 16, 21

## REGULATORY MATERIALS

*Elizabeth Pagliarini*,
    Release No. 63964, 2011 WL 674086 (Feb. 24, 2011) ....................... 23

*Ferris, Baker Watts, Inc.*,
    Release No. 2837, 2009 WL 321327 (Feb. 10, 2009) .......................................................... 23

*Financial Crimes Enforcement Network; Amendment to the Bank Secrecy Act
Regulations—Requirement that Brokers or Dealers in Securities Report
Suspicious Transactions*,
    67 Fed. Reg. 44,048 (July 1, 2002) ................................................................... 4, 22

*Gilford Sec's Inc.*,
    Release No. 9264, 2011 WL 4526119 (Sept. 30, 2011) ...................................................... 23

*Louis J. Akers*,
    Release No. 2923, 2009 WL 2857622 (Sept. 4, 2009) ........................................................ 23

*Park Fin. Grp.*,
    Release No. 56902, 2007 WL 4258182 (Dec. 5, 2007) ....................................................... 23

*Pinnacle Capital Mkts., L.L.C.*,
    Release No. 62811, 2010 WL 3437456 (Sept. 1, 2010) ...................................................... 23

*Recordkeeping by Brokers and Dealers*,
    46 Fed. Reg. 44,775 (Sept. 8, 1981) ..................................................................... 22

*Recordkeeping by Brokers and Dealers*,
    46 Fed. Reg. 61,454 (Dec. 17, 1981) ............................................................... 4, 22

*Ronald S. Bloomfield*,
    Release No. 71632, 2014 WL 768828 (Feb. 27, 2014) ....................................................... 5

*Technical Amendments to Rule 17a-8: Financial Recordkeeping and
Reporting of Currency and Foreign Transactions*,
    76 Fed. Reg. 11,327 (Mar. 2, 2011) ............................................................... 5, 22

## OTHER AUTHORITIES

Henry F. Minnerop, *Clearing Arrangements*, 58 Bus. Law. 917, 919 (2003).............................. 5

*Alpine Secs. Corp. v. SEC*, S. Ct. No. 21-82,
    Petition for a Writ of Certiorari, 2021 WL 3115302 (July 19, 2021) ................................... 14
    Brief for the Respondent in Opposition, 2021 WL 4553771 (October 4, 2021) .................. 13

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), defendant Securities and Exchange Commission moves to dismiss plaintiff Scottsdale Capital Advisors' (SCA) amended complaint (Dkt. 29).

The Commission's Motion should be granted for the following reasons: (1) SCA has failed to adequately allege Article III standing, because it has failed to plausibly allege a cognizable injury in fact that is traceable to any final Commission action and that would be redressed by the relief that SCA seeks; (2) SCA has failed to identify a "final agency action" that is subject to review under the Administrative Procedure Act (APA); and (3) SCA's complaint is untimely, because it was filed more than six years after any relevant conduct by the Commission.

The Commission respectfully requests that this Court accordingly dismiss SCA's amended complaint, with prejudice, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

SCA, an introducing broker, and its closely related (and now dismissed) co-plaintiff, Alpine Securities Corporation, a clearing broker, initiated this APA lawsuit (Dkt. 2) "[a]s a transparent attempt to relitigate rulings" in a Commission enforcement action in the Southern District of New York that were "unfavorable to Alpine." *SEC v. Alpine Secs. Corp.*, No. 17-4179, 2018 WL 3377152, at *1 (S.D.N.Y. July 11, 2018) (*Alpine II*). In that enforcement action, the Commission alleged that Alpine repeatedly had violated Section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78q(a)(1), and Exchange Act Rule 17a-8, 17 C.F.R. 240.17a-8, by failing to file suspicious activity reports (SARs), or filing inadequate SARs, for thousands of securities transactions it cleared—most of which involved SCA as the introducing broker. *Id.* at

*1, *5. "Alpine defended against the SEC's suit by arguing, *inter alia*, that the SEC lacks statutory authority to enforce Rule 17a-8 and that the promulgation of Rule 17a-8 was procedurally unsound" under the APA. *Id*. at *3. The SDNY court "addressed those arguments, ruling against Alpine in [its] Partial Summary Judgment Opinion." *Id*. Alpine and SCA—who alleged that it "may be required to indemnify Alpine for liability Alpine incur[red] in [the SDNY] action," *id*. at *4—then filed this lawsuit "premised on an expanded version of the same statutory and regulatory arguments [the SDNY court] rejected." *Id*. at *3. The firms also filed a motion that "expressly request[ed] that" this Court immediately "enjoin th[e] earlier-filed [SDNY] action." *Id*.; *see* Dkt. 6.

The SDNY court recognized this lawsuit for what it was: an attempt to "interfere[ ]" with SDNY's ongoing proceedings by filing "an improper collateral attack in another federal court." *Alpine II*, 2018 WL 3377152, at *3. The SDNY court accordingly enjoined Alpine and SCA "from litigating" this action until "after the conclusion of any appeal from the entry of final judgment in [the SDNY enforcement] action." *Id* at *5. The Second Circuit affirmed the injunction, *SEC v. Alpine Secs. Corp.*, 768 F. App'x 93 (May 28, 2019), and this Court stayed this action "while the SDNY injunction remain[ed] in effect," Dkt. 21 at 2.

The SDNY court later held Alpine liable for thousands of violations of Section 17(a) and Rule 17a-8. *SEC v. Alpine Secs. Corp.*, 354 F. Supp. 3d 396 (S.D.N.Y. 2018) (*Alpine III*); *SEC v. Alpine Secs. Corp.*, 413 F. Supp. 3d 235, 237 (S.D.N.Y. 2019) (*Alpine IV*). Finding that Alpine had "acted knowingly and with disregard for its obligations under the law," *Alpine IV*, 413 F. Supp. 3d at 245, by engaging in an "an ingrained, multi-year enterprise," *id*. at 249, to deprive regulators of "information necessary to timely investigate and squelch fraudulent and abusive trading practices," *id*. at 246, the court imposed a $12 million penalty on Alpine and enjoined it

from further violating the relevant securities laws, *id*. at 251. The Second Circuit affirmed, rejecting the same core allegations that SCA seeks to press in this suit: Alpine's arguments "that the SEC is not authorized to bring this civil enforcement action," *SEC v. Alpine Secs. Corp.*, 982 F.3d 68, 76 (2d Cir. 2020), and that "Rule 17a-8 violates the APA," *id*. at 80. The Supreme Court denied certiorari. *Alpine Secs. Corp. v. SEC*, 142 S. Ct. 461 (2021).

Following the Supreme Court's denial of certiorari, Alpine and SCA withdrew their preliminary injunction motion in this action (Dkt. 28), Alpine dismissed its claims (Dkt. 27), and SCA filed its amended complaint (Dkt. 29). SCA's dissatisfaction with the outcome of the Commission's enforcement action against its affiliated clearing broker remains manifest. Its continued attempt to relitigate that action in the guise of this APA lawsuit is defective, and its amended complaint should be dismissed, for three independent reasons.

*First*, SCA lacks standing to bring this suit. SCA alleges that "[t]he SEC's position in the Alpine Enforcement Action has created significant and onerous new regulatory costs, burdens, and uncertainty." Am. Compl. ¶ 20. But that conclusory legal allegation does not state a cognizable injury traceable to the SEC's conduct and, in any event, the relief SCA seeks in this Court is not substantially likely to redress its purported injury because—as SCA recognizes—it must comply with the relevant suspicious activity reporting requirements regardless of whether the Commission can enforce Rule 17a-8. *Second*, SCA complains about "the SEC's expansion of Rule 17a-8 to include the SAR reporting requirements," Am. Compl. at 39 (Prayer for Relief), but fails to identify a discrete "final agency action"—"an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" 5 U.S.C. 551(13)—subject to APA review. 5 U.S.C. 704. And *third*, even if SCA could articulate a redressable injury or identify a reviewable final agency action, its complaint is untimely. An APA lawsuit must be brought

"within six years after the right of action first accrue[d]." 28 U.S.C. 2401(a), and all relevant actions occurred more than six years before SCA filed this lawsuit: the Commission adopted Rule 17a-8 in 1981; the Treasury Department adopted the relevant SAR regulations in 2002 and stated that the Commission would enforce them under Rule 17a-8; the Commission began that enforcement as early as 2007; and the Commission amended Rule 17a-8 in 2011 to update the reference to Treasury's regulations.

## BACKGROUND

### A.   The SDNY court rejected Alpine's statutory and regulatory challenges to the Commission's authority to enforce SAR requirements under Section 17(a) and Rule 17a-8.

Exchange Act Section 17(a) requires brokers and dealers to "make and keep for prescribed periods such records … and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter." 15 U.S.C. (a)(1). The Commission promulgated Rule 17a-8 under that provision in 1981. *Recordkeeping by Brokers and Dealers*, 46 Fed. Reg. 61,454, 61,455 (Dec. 17, 1981) (*Rule 17a-8 Adopting Release*). Rule 17a-8 requires registered broker-dealers to "comply with the reporting, recordkeeping and record retention requirements" promulgated by the Treasury Department pursuant to the Bank Secrecy Act (BSA), 31 U.S.C. 5311, *et seq.* 17 C.F.R. 240.17a-8. Since 2002, those regulations have required broker-dealers to file "a report of any suspicious transaction relevant to a possible violation of law or regulation" with the Financial Crimes Enforcement Network (FinCEN). 31 C.F.R. 1023.320(a)(1); *see Financial Crimes Enforcement Network; Amendment to the Bank Secrecy Act Regulations—Requirement that Brokers or Dealers in Securities Report Suspicious Transactions*, 67 Fed. Reg. 44,048 (July 1, 2002) (*SAR Regulation Adopting Release*). In 2011, the Commission amended Rule 17a-8 "to update the reference to" Treasury's regulations.

4

*Technical Amendments to Rule 17a-8: Financial Recordkeeping and Reporting of Currency and Foreign Transactions*, 76 Fed. Reg. 11,327, 11,328 (March 2, 2011). Suspicious activity reports notify financial regulators of possible illegal activity, enabling them to take action where appropriate. *Ronald S. Bloomfield et al.*, Release No. 71632, 2014 WL 768828, at *22 (Feb. 27, 2014), *aff'd*, *Bloomfield v. SEC*, 649 F. App'x 546 (9th Cir. 2016).

On June 5, 2017, the Commission filed a civil enforcement action in the Southern District of New York against Alpine, a registered broker-dealer that "primarily provides clearance and settlement services for microcap securities traded in the over-the-counter market." *Alpine IV*, 413 F. Supp. 3d at 239, 241. The Commission alleged that "during a period of May 17, 2011 through December 31, 2015," Alpine had violated Rule 17a-8 thousands of times by failing to file SARs, filing deficient SARs, and failing to maintain or retain documentation supporting filed SARs, for numerous suspicious securities transactions. *Id*. at 241-42. SCA was "the introducing broker for most of the transactions at Alpine that [we]re at issue," and Alpine's owner "also owns" SCA. *Id.* at 240.[1]

At the court's invitation, the Commission moved for partial summary judgment, submitting "36 SARs under seal as examples of the four categories of Rule 17a-8 violations it asserts." *SEC v. Alpine Secs. Corp.*, 308 F.Supp.3d 775, 788 (S.D.N.Y. 2018) (*Alpine I*). Alpine cross-moved for summary judgment, arguing that the Commission "is not authorized to enforce BSA regulations" regarding SARs "via Rule 17a-8." *Id.* at 795. Alpine argued that Rule 17a-8 is "not a reasonable interpretation of the Exchange Act," and that the Commission "fail[ed] to

---

[1] While clearing brokers like Alpine perform back-office services associated with securities transactions, introducing brokers like SCA perform the customer-facing services, such as opening accounts, recommending the purchase or sale of securities, and executing orders. Henry F. Minnerop, *Clearing Arrangements*, 58 Bus. Law. 917, 919 (2003).

update the regulation or to engage in notice-and-comment procedures" necessary for Rule 17a-8 to encompass the SAR regulations. *Id*. at 795-96.

In March 2018, the district court granted the Commission's motion in part and denied Alpine's motion. *Id.* at 781. The court rejected Alpine's challenge to the Commission's statutory authority because the suit was "brought pursuant to the Exchange Act," not the BSA, and "Alpine does not contest that the SEC has enforcement authority to pursue violations of the Exchange Act." *Id.* at 795. The court also determined that Rule 17a-8 falls within the authority conferred by Exchange Act Section 17(a). *Id.* at 796. And it rejected Alpine's argument that the Commission violated the APA by "never properly solicit[ing] public comment on Rule 17a-8" related to the application of SAR regulations to broker-dealers. *Id.* at 797. The court found that "the text of the regulation itself, as well as the SEC's 1981 notice of final rule, unambiguously demonstrate the SEC's intent for the nature of the Rule 17a-8 reporting obligation to evolve over time through the Treasury's regulations." *Id.*

In June 2018, the district court denied Alpine's motion for reconsideration or certification for interlocutory review of the denial of summary judgment. *SEC v. Alpine Secs. Corp.*, No. 17-4179, 2018 WL 3198889, at *1-3 (S.D.N.Y. June 18, 2018). Alpine then sought mandamus review and an emergency stay of proceedings from the Second Circuit, both of which were denied. *Alpine II*, 2018 WL 3377152, at *2; Order (Dkt. 42), *In re Alpine Secs. Corp.*, No. 18-1875 (2d Cir. Aug. 7, 2018).

### B. The SDNY court enjoined Alpine and SCA from litigating this APA lawsuit, which sought to block the prosecution of the SDNY enforcement action.

Four days after the SDNY court denied Alpine's requests for reconsideration or appellate certification—and the same day Alpine filed its mandamus petition—SCA joined Alpine in filing the instant lawsuit against the Commission "under the Administrative Procedure Act … to

establish the invalidity of the SEC's attempt to use Exchange Act Rule 17a-8 … to pursue claims against Alpine and others for purported violations of suspicious activity reporting … regulations of the Bank Secrecy Act." Compl. ¶ 1 (Dkt. 2). SCA alleged that it had a "direct and substantial interest in preventing the SEC from pursuing" its "enforcement action against Alpine" because SCA "may be required to indemnify Alpine against any liability imposed." *Id.* ¶ 56. SCA and Alpine asked this Court to "declare unlawful the SEC's newly-minted and administratively defective application of Rule 17a-8" and to enjoin the Commission from "implementing or enforcing that provision or giving it effect in any manner." *Id.* ¶ 19. The firms simultaneously filed a motion for an immediate preliminary injunction, arguing that the Commission's "enforcement action against Alpine in the Southern District of New York violate[ed] the requirements of the Administrative Procedure[ ] Act," Dkt. 6 at 1, and put them at risk of irreparable harm because it could result in a monetary penalty that they speculated "would result in the total collapse of Alpine's business," *id*. at 24.

Given that this APA lawsuit was "directed at [the SDNY enforcement] action," *Alpine II*, 2018 WL 3377152, at *4, raised largely "the same statutory and regulatory arguments" the SDNY court already had rejected, and "expressly request[ed] that" this Court "enjoin th[e] earlier-filed [SDNY] action," *id*. at *3, the SDNY court enjoined Alpine and SCA from litigating this case until "after the conclusion of any appeal from the entry of final judgment in [the SDNY] action," *id*. at *5. Alpine, the court held, "was not permitted … to force the SEC to defend against largely the same arguments in another federal district court." *Id*. at *3. And although SCA was not a party to the enforcement action, the SDNY court held that it too was not permitted to "us[e] the Utah Action to attempt to block the SEC from pursuing this action." *Id*.

Alpine appealed the injunction, but SCA did not. *Alpine*, 768 F. App'x at 95. The Second

Circuit affirmed, finding that "[t]he District Court did not abuse its discretion in concluding that

'[t]he Utah action is a transparent attempt to relitigate rulings in this action unfavorable to

Alpine.'" *Id*. at 94. This Court stayed this action "while the SDNY injunction remains in effect."

Dkt. 21 at 2.

C.     **The SDNY court found Alpine liable for thousands of violations of Section 17(a) and Rule 17a-8, the Second Circuit affirmed, and the Supreme Court denied certiorari.**

The SDNY court subsequently held Alpine liable for 2,720 violations of Section 17(a)

and Rule 17a-8, determining "that the failures in Alpine's SAR-reporting regime were stark."

*Alpine III*, 354 F. Supp. 3d at 419. The court found that Alpine had "acted knowingly and with

disregard for its obligations under the law," *Alpine IV*, 413 F. Supp. 3d at 245, and that its

misconduct was "egregious," *id*., and "recurrent," *id*. at 247. It accordingly enjoined Alpine from

further violating Section 17(a) and Rule 17a-8, *id*. at 251, and imposed a $12 million civil

penalty, *id*. at 250. The court emphasized that Alpine's "obstruction of government oversight of

the [low-priced securities] market was an ingrained, multi-year enterprise" and that "[i]nstead of

undertaking the scrutiny and reporting of individual transactions required by law, Alpine chose

to run a high-volume business" in that market, *id*. at 249, without providing regulators

"information necessary to timely investigate and squelch fraudulent and abusive trading

practices," *id*. at 246. The court concluded that Alpine's "contempt for the SAR reporting

regime" had "increased the risk to investors that they would suffer substantial losses." *Id*.

The Second Circuit affirmed. *Alpine*, 982 F.3d 68. It upheld the district court's liability

and remedies determinations, *id*. at 83-86, rejecting Alpine's challenge to the Commission's

statutory authority to bring the enforcement action, *id*. at 76. It further held that Rule 17a-8 is a

permissible exercise of the Commission's rulemaking authority because the Commission had

reasonably "determined that the SARs, which assist the Treasury Department in targeting illegal securities transactions, would also serve to further the aims of the Exchange Act by protecting investors and helping to guard against market manipulation." *Id*. at 77. And the court rejected Alpine's argument that Rule 17a-8 "impermissibly allows the SEC to bypass the notice-and-comment requirements of the APA," *id*. at 80, because "(1) the SEC made clear in its request for public comment that Rule 17a-8 incorporated present and future Treasury SAR reporting requirements, and would be modified accordingly; (2) FinCEN itself published its SAR reporting requirements for public comment; and (3) FinCEN expressly notified the public that the SEC would continue to enforce the BSA's reporting changes," *id*. at 83.

The Supreme Court denied certiorari on November 8, 2021. *Alpine*, 142 S. Ct. 261.

**D.     The firms dropped their request for preliminary injunctive relief in this lawsuit, Alpine dismissed its claims, and SCA filed an amended complaint.**

On February 1, 2022, nearly three months after the Supreme Court's denial of Alpine's petition for a writ of certiorari, Alpine and SCA withdrew their motion for preliminary injunctive relief in this action. Dkt. 28. Alpine voluntarily dismissed its claims, Dkt. 27, and SCA filed its amended complaint, Dkt. 29. Although SCA can no longer use this lawsuit to halt the SDNY enforcement action, the crux of its complaint remains "[t]he SEC's position in the Alpine Enforcement Action," Am. Compl. ¶ 20, and "the New York court's adoption" of that position, *id*. ¶ 70. The amended complaint's prayer for relief does not identify any discrete final agency action. Rather, like the original complaint, it continues to ask this Court to set aside what SCA calls "the SEC's expansion of Rule 17a-8 to include the SAR reporting requirements adopted by FinCEN." Am. Compl. at 39. It also asks the Court to "enjoin[ ] the SEC … from implementing, applying, enforcing, or taking any action whatsoever under the expanded Rule 17a-8." *Id.* A redline comparison of the original complaint and amended complaint, attached as Exhibit A to

aid this Court's review, demonstrates that SCA's allegations remain largely the same as they were when the SDNY court (affirmed by the Second Circuit) enjoined this lawsuit.[2]

## ARGUMENT

The Court should dismiss the amended complaint for lack of subject-matter jurisdiction and failure to state a cognizable claim. This Court "lack[s] … subject-matter jurisdiction," Fed. R. Civ. 12(b)(1), both because SCA is complaining about the cost of complying with suspicious activity reporting requirements that will remain in effect regardless of the outcome of this lawsuit and, independently, because SCA has failed to identify a reviewable "final agency action." And SCA has "fail[ed] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), because every aspect of the alleged "expansion of Rule 17a-8 to include the SAR reporting requirements," Am. Comp. at 39, occurred more than six years before SCA filed its initial complaint in 2018, and this action is therefore untimely. 28 U.S.C. 2401(a).

## I.     SCA fails to adequately allege Article III standing.

SCA bears the burden of alleging that the Court has jurisdiction over this lawsuit, and "there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). To adequately plead Article III standing, SCA must allege (1) "an injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). SCA must "plead the elements of standing in accordance with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Southwest Environmental Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1129 (D.N.M. 2018). "'Threadbare recitals of the elements of a

---

[2] The redline does not reflect formatting changes.

cause of action, supported by mere conclusory statements, do not suffice.'" *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Although "'specific facts are not necessary' … the plaintiff must provide 'more than labels and conclusions, or a formulaic recitation of the elements of a cause of action.'" *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (citation omitted). In particular, SCA "must allege facts from which it reasonably could be inferred that ... if the court affords the relief requested, the [injury] will be removed." *Warth v. Seldin*, 422 U.S. 490, 504 (1975). An allegation "that the relief requested *might* redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (emphasis in original). Instead, Article III requires SCA to allege facts that support "a substantial likelihood that the relief requested will redress its injury in fact." *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005). SCA has not met its burden.

> **A.    SCA fails to plausibly allege a cognizable legal injury traceable to any final Commission action.**

SCA alleges that "[t]he SEC's position" in the SDNY enforcement action against Alpine "created significant and onerous new regulatory costs, burdens and uncertainty, particularly for broker-dealers … with respect to the SAR filing obligations." Am. Compl. ¶ 20. The firm asserts that it "is one of those affected broker-dealers," *id*. ¶ 21, and claims to have suffered "economic injury," *id*. ¶ 68, in the form of "substantially increased the costs of compliance," *id*. ¶ 70, because it allegedly has "been forced to devote substantial time and resources … to avoid regulatory inquiry, excessive penalties, or enforcement actions," *id.* ¶ 21.

But, crucially, SCA acknowledges that it must comply with the SAR requirements in 31 C.F.R. 1023.320 regardless of whether the Commission can enforce them under Rule 17a-8. *Id*. ¶¶ 49-52. It nevertheless claims that the requested injunction against the Commission's

11

enforcement of Rule 17a-8, *id.* at 39, would redress its asserted injury because the Commission's "view … about what FinCEN's SAR regulation requires and what constitutes an actionable SAR violation" is "much more rigid" than FinCEN's, *id.* ¶ 63, resulting in "two distinct SAR enforcement schemes," *id.* ¶ 66.

SCA's assertion that the Commission's enforcement of Rule 17a-8 has created a "distinct SAR enforcement scheme[ ]," *id.*, is a legal conclusion that this Court is "not 'bound to accept as true.'" *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). And as the Second Circuit concluded, that assertion is incorrect. *Alpine*, 982 F.3d at 83-84. By its terms, Rule 17a-8 requires compliance "with the reporting, recordkeeping and record retention requirements of chapter X of title 31 of the Code of Federal Regulations." 17 C.F.R. 240.17a-8. The Second Circuit rejected Alpine's argument, 982 F.3d at 83-84, advanced now by SCA, that the Commission's enforcement of Rule 17a-8 has established a "bright-line rule" regarding "what constitutes an actionable … violation" of those regulations that "is flatly inconsistent with FinCEN's stated view," Am. Compl. ¶¶ 63-64. To the contrary, the Second Circuit found, "the district court recognized that each 'SAR must, of course, be examined individually' and, without announcing a mechanical or bright-line test, reviewed all of the alleged deficiencies before concluding that ... summary judgment was warranted." *Alpine*, 982 F.3d at 84. To reach that conclusion, the Second Circuit held, "[t]he district court did nothing other than independently interpret the supporting FinCEN documentation, which was consistent with the SEC's interpretation" of the SAR requirements. *Id.* at 83; *accord Alpine III*, 354 F. Supp. 3d at 417 ("The violations that the SEC asserts occurred here arose from Alpine's failure to comply with Section 1023.320's mandates and the SAR Form's instructions, [which were] issued as FinCEN regulations following a notice and comment period."); *id.* at 425 ("Alpine's

argument … is flatly contradicted by the SAR Form."); *id*. at 426 ("Alpine's omission ... is … at odds with FinCEN's view, as expressed on the SAR Form itself."). As the district court stated, "[n]othing [the Commission] did or said" in its enforcement of Rule 17a-8 "can increase the scope of th[e] duty" to "comply with the requirements of Section 1023.320." *Id*. at 418.

SCA points to an amicus brief filed by "[f]ormer FinCEN officials"—who do not represent the agency—in support of Alpine's certiorari petition. Am. Compl. ¶ 67. SCA asserts that the amicus brief "[d]enounc[es]" the Commission's "inconsistent enforcement" of the SAR requirements. *Id*. But the Acting Solicitor General of the United States, who represents the entire federal government, signed the brief in opposition to certiorari. Brief for the Respondent in Opposition, *Alpine Secs. Corp. v. SEC*, S. Ct. No. 21-82, 2021 WL 4553771 (Oct. 4, 2021). That brief describes the history of FinCEN and the Commission's cooperation in developing and enforcing the SAR requirements, *id*. at 4-6, 23-25, and states that "the courts below did not establish any 'bright line rule[s]' regarding broker-dealers' suspicious-activity reporting obligations, let alone rules 'inconsistent with FinCEN's view[s],'" *id*. at 24.

In these circumstances, SCA's allegations about its purportedly increased compliance costs are insufficient to confer standing for two reasons. *First*, the allegations are devoid of any facts. SCA's allegations of injury hinge entirely on the claimed existence of two distinct SAR enforcement schemes, but SCA does not identify any factual situation in the decades that Rule 17a-8 has been on the books when any divergence between the Commission and FinCEN has occurred, much less allege any concrete instances of harm to SCA's interests. Instead, SCA repeats, often word-for-word, the same legal arguments that Alpine—represented by the same counsel as SCA is in this lawsuit—unsuccessfully raised for years in the SDNY litigation. For example, Alpine's certiorari petition argued: "The SEC has … taken a much more rigid view

than FinCEN about what constitutes an actionable SAR violation. The SEC pressed, and the lower courts here adopted, the position that a broker-dealer must file a SAR whenever it is alerted to a red flag in a sizeable transaction of low-priced securities and must then enumerate in the narrative portion of the SAR form each of those red flags." Petition for a Writ of Certiorari, *Alpine*, S. Ct. No. 21-82, 2021 WL 3115302, at 28 (July 19, 2021). SCA now recites nearly identical language in its amended complaint. Am. Compl. ¶ 63; *compare also* Petition at 27-31 *with* Am. Compl. ¶¶ 59-67 & Exhibit A ¶¶ 59-67. Such formulaic recitations of legal conclusions are insufficient to adequately allege standing. *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (allegation that it was defendant's policy to "query employees' prescription drug records without a warrant" was the "type of 'formulaic recitation of the elements of a cause of action' that is insufficient to meet the *Twombly* pleading standard"); *Deadrich v. Salt Lake Cty.*, No. 20-cv-00108, 2020 WL 5531259, at *2 n.35 (D. Utah Sept. 15, 2020) (allegation that it was "the official policy and custom of the Salt Lake County jail … to inadequately provide prenatal care to pregnant inmates" was "insufficient to satisfy *Twombly*'s pleading standard").

*Second*, SCA's purported compliance costs are not traceable to any final Commission action. They derive instead from SCA's incorrect legal interpretation of the Commission's enforcement authority, including its incorrect legal conclusion that there are differences between what Rule 17a-8 and Treasury's regulations require. Thus, any harm is self-inflicted and not legally cognizable. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (party "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). It stems from SCA's subjective fears and is not fairly traceable to the Commission's conduct, because SCA "ha[s] a similar incentive to engage in many of the countermeasures that [it is] now taking" regardless of the

Commission's enforcement authority under Rule 17a-8. *Id.* at 417; *see also Colorado v. EPA*, 989 F.3d 874, 888 (10th Cir. 2021).

### B.     SCA fails to adequately allege that its putative injury would be redressed by the relief that it seeks.

"It is a well-established principle that a plaintiff cannot demonstrate redressability when its lawsuit challenges only one of two government actions that both independently produce the same alleged harm." *Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 187, 219 (D.D.C. 2018) (citing authorities). Because SCA must comply with the same suspicious activity reporting requirements regardless of whether the Commission enforces them under Rule 17a-8, SCA's allegations do not support a reasonable inference that it is "substantially likely" that enjoining the Commission from enforcing those requirements—or any of the other relief it seeks—will "materially reduce" SCA's compliance costs, as is necessary to establish standing. *Nova*, 416 F.3d at 1159-60; *see Producers of Renewables United for Integrity Truth and Transparency v. EPA*, No. 19-9532, 2022 WL 538185, at *8 (10th Cir. Feb. 23, 2022) (finding no redressability because "we do not see how a decision reversing the EPA's chosen remedy for three small refineries recoups lost demand" that plaintiff asserted as its injury).

SCA alleges that the Exchange Act and the BSA require different states of mind to establish a violation and allow for different penalties. Am. Compl. ¶ 59. But SCA does not allege that those differences have increased its compliance costs. Nor could it. The impact of any alleged differences rest on a speculative chain of events: (1) the Commission will investigate SCA; (2) the Commission will find that SCA violated the law; (3) the Commission will approve an enforcement action; (4) a court will find SAR violations where SCA acted with less than reckless disregard (the state of mind required for BSA violations, *In re B.A.K. Precious Metals, Inc.*, FinCEN, No. 2015-12, at 3 n.6 (Dec. 30, 2015)); and (5) the court will award penalties that

exceed the BSA's threshold. Such a "highly attenuated chain of possibilities" does not confer

standing. *Clapper*, 568 U.S. at 410. Moreover, any suggestion that the differences between the

Exchange Act and the BSA have increased SCA's compliance costs—which would be reduced if

this Court granted the relief SCA seeks—is belied by the fact that in the SDNY enforcement

action that is the source of SCA's complaint, the court held that Alpine had "knowingly" violated

its suspicious activity reporting obligations, *Alpine IV*, 413 F. Supp. 3d at 245, and imposed a

penalty that was within the BSA's limits for such a violation, *compare id.* at 250 n.27 *with* 31

U.S.C. 5321(a)(1).

## II.     SCA fails to identify a "final agency action" subject to APA review.

"[T]he APA 'does not provide judicial review for everything done by an administrative

agency.'" *Nat'l Veterans Legal Servs. Program v. Dep't of Defense*, 990 F.3d 834, 839 (4th Cir.

2021). Rather, the APA provides for "judicial review" of "final agency action for which there is

no other adequate remedy in a court." 5 U.S.C. 704; *see also* 5 U.S.C. 702 ("A person suffering

legal wrong because of agency action ... is entitled to judicial review thereof."). SCA "must

challenge" such a "'final agency action' to confer upon" this Court the "jurisdiction under the

[APA]." *Chem. Weapons Working Group, Inc. v. Dep't of the Army*, 111 F.3d 1485, 1494 (10th

Cir. 1997).[3] The APA defines "agency action" as "an agency rule, order, license, sanction, relief,

or the equivalent or denial thereof, or failure to act." 5 U.S.C. 551(13). And to "determine if an

agency action is final," the Tenth Circuit "look[s] to whether its impact is 'direct and

immediate,' … whether the action 'mark[s] the consummation of the agency's decisionmaking

process,' … and whether the action is one by which 'rights or obligations have been determined,

---

[3] To the extent that "final agency action" is considered to be an element of the cause of action rather than a jurisdictional requirement, *see Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006), dismissal is appropriate under Rule 12(b)(6), *Karst Envt'l Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1297-98 (D.C. Cir. 2007).

or from which legal consequences will flow,'" *Colorado Farm Bureau Fed'n v. U.S. Forest Service*, 220 F.3d 1171, 1173-74 (2000). As "the party invoking federal jurisdiction" under the APA, SCA must in its complaint "identify[ ] specific federal conduct and explain[ ] how it is 'final agency action' within the meaning of section 551(13)," *id.* at 1173, and Section 704, *Utah Native Plant Soc'y v. U.S. Forest Service*, 923 F.3d 860, 865, 872-73 (10th Cir. 2019).

SCA comes nowhere close to satisfying that burden. Its amended complaint fails to even mention APA Sections 551(13) or 704, let alone explain how the conduct it complains of satisfies those provisions. SCA is not challenging the Commission's 1981 promulgation of Rule 17a-8, Treasury's 2002 promulgation of the SAR requirements in 31 C.F.R.1023.320, or the Commission's 2011 amendment of Rule 17a-8, all of which were "final agency action[s]"— probably because SCA recognizes that any such challenge would be untimely, *infra* at 21-24. Instead, SCA challenges what it calls "the SEC's expansion of Rule 17a-8 to include the SAR reporting requirements," Am. Compl. at 39, as demonstrated by "[t]he SEC's position in the Alpine Enforcement Action," *id*. ¶ 20; *see id.* ¶ 4 ("the SEC's present interpretation of Rule 17a-8"); *id*. ¶ 22 ("the SEC's newly-minted and administratively defective application of Rule 17a-8"); *id*. ¶ 57 ("[t]he SEC's claim that Rule 17a-8 incorporated, in perpetuity, all BSA provisions after 1981"); *id*. ¶ 59 ("[t]he SEC's SAR-enforcement regime"); *id*. ¶ 69 ("the SEC's imposition of new SAR Requirements through the Alpine Enforcement Action and … examination, risk alerts and other enforcement and adjudicatory actions"). That alleged conduct is not a "rule, order, license, sanction, [or] relief," under the statute. 5 U.S.C. 551(13); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62, 64 (2004) ("agency action" limited to these "five categories of decisions made or outcomes implemented by an agency").

"Enforcement actions" are "[e]xcluded from this court's review" under the APA because they are "'committed to agency discretion by law.'" *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030 (D.C. Cir. 2007) (quoting 5 U.S.C. 701(a)(2)); *see Sierra Club v. Yeutter*, 911 F.2d 1405, 1411 (10th Cir 1990). And, by definition, a position the Commission takes in litigation before a federal court does not constitute "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. 704.

A litigation position is not "agency action." *Walmart Inc. v. DOJ*, 517 F. Supp. 3d 637, 648-49 (E.D. Tex.), *aff'd*, 21 F.4th 300 (5th Cir. 2021) (holding that "the litigation positions taken by DOJ in advance of its threatened enforcement action" do not "meet 5 U.S.C. § 551(13)'s definition of 'agency action'"). Nor does the assertion of such a position determine "'rights or obligations'" or trigger immediate "'legal consequences,'" such that it is a "final" agency action. *Colorado Farm Bureau*, 220 F.3d at 1173-74; *see Walmart*, 21 F.4th 300, 309 (5th Cir. 2021) ("[A] criminal complaint does not create rights or obligations, nor does it have 'future effect.'"); *AT&T v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001) (agency "expressing its view of the law" is not final agency action because it "has force only to the extent the agency can persuade a court to the same conclusion").

And far from "[a]void[ing] any judicial scrutiny" of its allegedly "unlawful and defective expansion of its jurisdiction and application of Rule 17a-8," Am. Compl. ¶ 16, the Commission *invited* such scrutiny by filing its enforcement action against Alpine in federal district court. SCA may be unhappy that both the district court and the Second Circuit "adopt[ed]" the Commission's position in that action. Am. Compl. ¶ 70. But that judgment, of course, is not "agency action," nor is it subject to collateral attack in this or any other lawsuit. *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) ("The collateral attack doctrine

18

precludes litigants from collaterally attacking the judgments of other courts.") (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)).

In addition, the APA permits review only of "*discrete* action[s]" and precludes "broad programmatic attack[s]," *Norton*, 542 U.S. at 62-64, such as SCA's complaints about "the SEC's present interpretation of Rule 17a-8," Am. Compl. ¶ 4, or "the SEC's SAR-enforcement regime," *id.* ¶ 59. As the Tenth Circuit has explained, "[a] district court presented with such vague statements cannot determine its jurisdiction." *Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597, 602-03 (10th Cir. 2018) (dismissing complaint for lack of APA jurisdiction because allegation concerning "various leases" owned by plaintiff "fail[s] to specify with any degree of clarity which agency actions they are seeking to challenge"); *see also Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013) (vague allegation that agency operated dams in obstructive manner insufficiently discrete); *Osage Producers Ass'n v. Jewell*, 191 F. Supp.  3d 1243, 1249 (D. Okl. 2016) (dismissing complaint because plaintiff "d[id] not identify the specific actions it seeks to challenge," and instead "generically describe[d] certain arbitrary or unlawful agency practices," leaving the court "unable to identify which, or even how many, agency actions are subject to this suit"); *Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 945-46 (E.D. Mich. 2015) (dismissing "opaque allegations about Defendants' 'conduct,' 'conclusions,' 'adoption,' or 'application'" as "gossamer terms" without "concrete content sufficient to be" agency action); *Banner Health v. Sebelius*, 797 F. Supp. 2d 97, 109-10 (D.D.C. 2011) (dismissing "vague and non-specific" and "free-floating allegations" regarding how agency implemented various aspects of Medicare program "untethered to any discrete agency action").

If the Commission pursues an enforcement action against SCA under Rule 17a-8, SCA

can raise any appropriate "statutory and regulatory arguments" in defense as Alpine did, *Alpine*

*II*, 2018 WL 3377152, at *3—an avenue that provides yet another "adequate remedy in a court."

*See Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (An alternative remedy "need not

provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'");

*Quicken Loans*, 152 F. Supp. 3d at 949-50 (dismissing APA claims where enforcement action

would provide opportunity to litigate claims and defenses); *Temple Univ. v. Brown*, No. 00-cv-

1063, 2001 WL 185535, at *7 (E.D. Pa. Feb. 23, 2001) (same), *aff'd*, 46 F. App'x 124 (3d Cir.

2002); *N.J. Hosp. Ass'n v. United States*, 23 F. Supp. 2d 497, 501 (D.N.J. 1998) (same); *Ass'n of

Am. Med. Colls. v. United States*, 34 F. Supp. 2d 1187, 1193 (C.D. Cal. 1998) (same). What SCA

cannot do is relitigate through this APA lawsuit the position the Commission took in another

enforcement action.

SCA's invocations of the Declaratory Judgment Act, 28 U.S.C. 2201, Am. Compl. ¶¶ 27,

119; the Regulatory Flexibility Act (Reg Flex Act), 5 U.S.C. 601 *et seq*., Am. Compl. ¶¶ 27, 55,

85 & Count IV; and the Exchange Act, Am. Compl. ¶ 27 & Count V, do not cure this

jurisdictional defect. "[I]t is settled that [the Declaratory Judgment Act] does not itself confer

jurisdiction on a federal court where none otherwise exits." *Amalgamated Sugar Co. v. Bergland*,

664 F.2d 818, 822 (10th Cir. 1981); *see also Schulke v. United States*, 544 F.2d 453, 455 (10th

Cir. 1976) ("One seeking relief under the [declaratory judgment] statute must establish a separate

and independent basis for jurisdiction"). Like the APA, the Reg Flex Act allows "judicial

review" only "[f]or a rule" where "a small entity that is adversely affected or aggrieved by final

agency action." 5 U.S.C. 611(a)(1).[4] And the Exchange Act also provides that only "[a] person aggrieved by a final order of the Commission" or "adversely affected by a [covered] rule of the Commission" may "obtain review," with the added requirement that such review must be sought "in the United States Court of Appeals for the circuit in which [the person] resides or has his principal place of business, or for the District of Columbia Circuit," 15 U.S.C. 78y(a)(1) & (b)(1)—not in federal district court.

## III.     SCA's complaint is untimely.

Even if this Court were to find that it has jurisdiction over this lawsuit, it should dismiss SCA's complaint as untimely. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  Although a statute of limitations bar is an affirmative defense, it "'may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (cleaned up). In deciding a motion to dismiss, a court "may 'take judicial notice of … facts which are a matter of public record.'" *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (citation omitted). "[A] civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a)," *Nagahi v. I.N.S.*, 219 F.3d 1166, 1171 (10th Cir. 2000), meaning "within six years of the claim's accrual rather than within six years of notice." *Impact Energy Resources, LLC v. Salazar*, 693 F.3d 1239, 1245-46 (10th Cir. 2012).

---

[4] In addition to its failure to identify a "rule" or "final agency action," SCA also fails to allege that it is a "small entity" entitled to review under the Reg Flex Act, 5 U.S.C. 601(6), or any facts that could support such an assertion.

As discussed above (at 17), SCA is not challenging the Commission's 1981 promulgation of Rule 17a-8, Treasury's 2002 promulgation of the SAR requirements in 31 C.F.R.1023.320, or the Commission's 2011 amendment of Rule 17a-8 "to update the reference to" Treasury's regulations, *Technical Amendments to Rule 17a-8*, 76 Fed. Reg. at 11,328—all of which occurred more than six years before SCA filed this lawsuit on June 22, 2018. Rather, SCA challenges "the SEC's expansion of Rule 17a-8 to include the SAR reporting requirements," Am. Compl. at 39, as demonstrated by "[t]he SEC's position in the Alpine Enforcement Action," *id*. ¶ 20. Although the Commission filed that enforcement action just over a year before SCA filed this lawsuit, it had by then been asserting for at least a decade that Rule 17a-8 encompasses the SAR requirements.

As an initial matter, when the Commission proposed and adopted Rule 17a-8—over 36 years before SCA filed this suit—it made clear that the Rule "does not specify the required reports and records so as to allow for any revisions the Treasury may adopt in the future." *Recordkeeping by Brokers and Dealers*, 46 Fed. Reg. 44,775, 44,776 (Sept. 8, 1981); *Rule 17a-8 Adopting Release*, 46 Fed. Reg. at 61,454 (same). When Treasury adopted the SAR regulation in 2002—nearly 16 years before SCA filed this suit—it recognized that those reporting requirements would be encompassed by Rule 17a-8: "The SEC adopted rule 17a-8 in 1981 under the [Exchange Act], which enables the SROs, subject to SEC oversight, to examine for BSA compliance. Accordingly, both the SEC and SROs will address broker-dealer compliance with this rule." *SAR Regulation Adopting Release*, 67 Fed. Reg. at 44,049.

And since Treasury adopted the SAR regulation, the Commission has, "consistent[ly] over the years," expressed "its view that Rule 17a-8 encompasses [that] regulation[ ]." *Alpine I*, 308 F. Supp. 3d at 797. SCA in fact recognizes that the Commission "began to claim that it

possessed authority to enforce the SAR provisions" in "settled administrative enforcement actions" before it filed the SDNY enforcement action against Alpine. Am. Compl. ¶ 16. Indeed, at least as early as 2007, the Commission held in such an action that "[t]he failure to file a SAR as required by 31 C.F.R. § 103.19 is a violation of Section 17(a) of the Exchange Act and Rule 17a-8 thereunder." *Park Financial Grp., et al.*, Release No. 56902, 2007 WL 4258182, at *4 (Dec. 5, 2007); *see also, e.g.*, *Gilford Sec's Inc., et al.*, Release No. 9264, 2011 WL 4526119, at *6-7 (Sept. 30, 2011) (same); *Elizabeth Pagliarini*, Release No. 63964, 2011 WL 674086, at *3 (Feb. 24, 2011) (same); *Louis J. Akers*, Release No. 2923, 2009 WL 2857622, at *1 (Sept. 4, 2009) (same); *Ferris, Baker Watts, Inc.*, Release No. 2837, 2009 WL 321327, at *10 (Feb. 10, 2009) (same); *cf. Pinnacle Capital Markets, LLC, et al.*, Release No. 62811, 2010 WL 3437456, at *4 (Sept. 1, 2010) ("Section 17(a) of the Exchange Act and Rule 17a-8 thereunder require a broker-dealer to comply with the reporting, recordkeeping and record retention requirements in the regulations implemented under the BSA, which includes the CIP rule.").

Far from being "newly-minted," Am. Compl. ¶ 22, the Commission's position that Rule 17a-8 encompasses the SAR requirements—which is supported by the Rule's long-standing plain text—was clear well over six years before SCA filed this APA lawsuit challenging that position. Even assuming the Commission's assertion of that position were a "final agency action" reviewable under the APA—and it is not, *supra* at 16-21—SCA's suit accordingly is time-barred.

As with the jurisdictional defect, *supra* at 20-21, SCA's invocations of the Declaratory Judgment Act, Reg Flex Act, and Exchange Act do not solve its timeliness problem. A declaratory judgment action "is time-barred if the applicable limitations period has run on a direct claim to obtain such relief." *118 E. 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d

200, 202 (2d Cir. 1982); *see Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 177 n.4 (10th Cir. 2010). A "small entity" must seek review under the Reg Flex Act within "one year" of the date of the relevant final agency action. 5 U.S.C. 611(a)(3)(A). And "[a] person aggrieved by a final order of the Commission" or "adversely affected by a [covered] rule of the Commission" must seek review under the Exchange Act in a federal court of appeals "within sixty days after the entry of the order" or "promulgation of the rule." 15 U.S.C. 78y(a)(1) & (b)(1).

## CONCLUSION

This Court should dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).

Dated:  April 4, 2022                    Respectfully submitted,

By: /s/ Stephen Silverman
STEPHEN SILVERMAN
Attorney

RACHEL M. MCKENZIE
Senior Litigation Counsel

MATTHEW S. FERGUSON
Senior Counsel

U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
silvermanst@sec.gov
202-551-6150 (Silverman)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2022, I served the foregoing Motion to Dismiss upon the

counsel for Plaintiff via ECF.

 */s/  Stephen Silverman*
STEPHEN SILVERMAN
Attorney
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
silvermanst@sec.gov
202-551-6150